MATTER OF KWUN

In Bond Proceedings

A–15997430

*Decided by Board November 21, 1969*
*Service Motion January 8, 1970*
*Decided by Board February 13, 1970*

Once an alien is notified to surrender for deportation and is taken into custody for that purpose, the special inquiry officer lacks jurisdiction pursuant to 8 CFR 242.2(b) to entertain the alien's appeal from the District Director's bail determination. Under such circumstances, appeal from the District Director's determination lies only with the Board of Immigration Appeals.

ON BEHALF OF RESPONDENT:
Jules E. Coven, Esquire
Lebenkoff & Coven
One East 42d Street
New York, New York 10017

ON BEHALF OF SERVICE:
Irving A. Appleman
Appellate Trial Attorney

Charles Gordon
General Counsel
(Brief filed)

**BEFORE THE BOARD**
(November 21, 1969)

Respondent, an alien detained by the District Director for deportation, appeals from an order of a special inquiry officer refusing to disturb the District Director's decision to continue respondent in custody notwithstanding the pendency of an action for judicial review. The special inquiry officer ruled that he lacked power under 8 CFR 242.2(b) to grant the relief requested, and that, even if he possessed that power, relief should be denied in the exercise of discretion. We conclude that the special inquiry officer erred in both regards and we sustain the appeal.

From the special inquiry officer's order and the statements made at oral argument, as well as from our two prior orders in respondent's case, the following facts appear to be undisputed: Respondent is an alien crewman who was found deportable after a

457

hearing before a special inquiry officer on May 20, 1969 and was granted voluntary departure. He failed to depart within the time limited, a warrant for his deportation was issued, and he was directed to surrender on October 27, 1969 for deportation two days later. He surrendered as requested and has been in Service custody since.

On October 20, 1969, counsel for respondent filed a motion to reopen the proceedings to permit him to apply for adjustment of status pursuant to sections 203(a)(7) and 245 of the Immigration and Nationality Act. In his motion papers, counsel challenged as unconstitutional the provisions of section 245 excluding crewman from its benefits. Coupled with the motion to reopen was a request for a stay of deportation pursuant to 8 CFR 242.22 pending decision on the motion. The Service's trial attorney opposed the stay and refused to waive the 10-day period afforded by 3 CFR 103.5 within which to file a brief in opposition to the motion. Without ruling on the motion, the special inquiry officer on October 27, 1969 denied the stay. On the same day, respondent filed an appeal to this Board from the order denying a stay and requested oral argument on the appeal.

The Service concluded that the appeal did not automatically stay deportation under 8 CFR 3.6 and prepared to proceed with respondent's deportation. On October 28, 1969, we denied counsel's telephonic request for a stay of deportation. In a confirmatory order dated October 29, 1969, we concluded that the motion to reopen must be denied since neither the special inquiry officer nor this Board has power to rule on the constitutionality of an act of Congress. We therefore held that the special inquiry officer had properly denied the requested stay of deportation and we denied the stay application directed to us.

On October 29, 1969 counsel for respondent filed a petition for review under section 106(a) of the Act in the United States Court of Appeals for the Second Circuit. We are told that it challenges our order of October 29, 1969. Concluding that he was bound by the automatic stay of deportation afforded by section 106(a)(3) of the Act, the District Director held up respondent's scheduled deportation but determined that he should be continued in Service custody pending termination of the litigation.

When we received the record on respondent's appeal from the special inquiry officer's order denying a stay pending determination of the motion to reopen, we promptly denied the request for oral argument and summarily dismissed the appeal. In an order dated November 3, 1969, we pointed out that we had already de-

termined the merits of the order appealed from in our order dated October 29, 1969.

Although the Service's trial attorney has filed no brief in opposition and the 10-day period provided by 8 CFR 103.5 has long expired, the special inquiry officer has thus far deliberately refrained from formally adjudicating respondent's motion to reopen, for reasons which he explains in the order now before us on appeal. That order, dated November 4, 1969, denied counsel's application for a redetermination, pursuant to 8 CFR 242.2(b), as amended,[1] of the District Director's decision to continue respondent in custody pending termination of the review proceedings in the court of Appeals.

## 1. *The jurisdictional question*

The special inquiry officer concluded that he lacked jurisdiction because of the last sentence of 8 CFR 242.2(b). That sentence states that the provisions regarding the renewal of an application or request for a determination by a special inquiry officer, and appeal therefrom to this Board, "shall not apply when the Service notifies the alien that it is ready to execute the order of deportation and takes him into custody for that purpose."

In *Matter of Au*, Interim Decision No. 1939 (BIA 1968), we had construed the quoted language as not precluding administrative review of the District Director's detention determination in a situation where the deportation order could not be promptly executed because of the automatic stay afforded by section 106(a)(3). We there stated, at page 6, "Where, as here, review proceedings are pending in court which may take a long time before final conclusion, we cannot believe that the regulation intended to make the District Director's detention determination administratively conclusive." The special inquiry officer in the instant case rejected the rationale of *Matter of Au*, stating (opinion, p. 4), "Sound administration and effective enforcement of the law should not turn on the speculation of the Special Inquiry Officer or the Board as to how long a case may take for disposition in the Court of Appeals or in the District Court."

At oral argument before the Board, the Service's Appellate Trial Attorney receded from the Service's prior position before the special inquiry officer on the jurisdictional question and sought to justify the special inquiry officer's decision solely as a proper exercise of discretion, distinguishing *Matter of Au* on the

---

[1] 34 Fed. Reg. 7327 (May 6, 1969) ; 34 Fed. Reg. 8037 (May 22, 1969).

facts. Since the special inquiry officer's decision is posited largely on his asserted lack of power, and since the question is an important one, we will reconsider it.

As we pointed out in *Matter of Au,* the Service's power to detain or enlarge an alien on bail during the course of deportation proceedings and pending ultimate execution of a deportation order is defined in section 242(a) and (c) of the Act. That power was designed for use, where needed, to make the alien available for hearing and, if ordered, for deportation. Denial of bail has been sustained by the courts only where it has been demonstrated that the alien is a security risk or is likely to abscond. Originally, the Service's determination was administratively final and was subject to review only in the courts.

In 1954, the Attorney General by regulation conferred appellate jurisdiction on the Board to review Service determinations relating to an alien's bond, parole, or detention, 8 CFR 6.1(b)(7); 3 CFR 242.2; 19 Fed. Reg. 2442 (July 20, 1954). The new regulation contained the identical language, quoted above, excluding appellate review when the Service notifies the alien that it is ready to execute the deportation order and takes him into custody for that purpose. That provision is now incorporated in 8 CFR 242.2(b).

In *Matter of Guerra,* Interim Decision No. 1914 (BIA 1968), we concluded that we lacked jurisdiction under that provision to review a District Director's bail determination where the alien was in Service custody for deportation. No review litigation was pending in that case. In *Matter of Au, supra,* we held we had jurisdiction because there was litigation pending and the statutory stay of deportation precluded deportation. We found that the alien was concededly a good bail risk who was being detained solely to exact his agreement to accelerated disposition of the litigation, which the Service considered purely dilatory. We concluded that such use of the detention power is impermissible and ordered the alien's release on bond.

Section 242.2(b) of the regulations was thereafter amended by regulations promulgated by the Commissioner, pursuant to Notice of Proposed Rule Making, 34 Fed. Reg. 5509 (March 21, 1969); 34 Fed. Reg. 7327 (May 6, 1969); 34 Fed. Reg. 8037 (May 22, 1969). Under the amended regulations, the appeal to this Board from the District Director's detention determination was eliminated. The application or request for release could be renewed, however, before a special inquiry officer and his decision was made appealable to this Board. Continued without change was the

provision, quoted above, making the renewal procedure and appeal to this Board inapplicable when the Service is ready to execute the deportation order and takes the alien into custody **for** that purpose.

There is nothing in the Notice of Proposed Rule Making or **in** the text of the amended regulations to indicate that they were designed to change in any way the jurisdictional situation as **we** had construed it in *Matter of Au.* Indeed, under familiar canons of construction, the use of the identical language in the amended regulation, after the gloss we had put on that language in *Matter of Au,* leads us to believe that the Commissioner intended the same result under the amended regulation. The amended regulations carry into effect a suggestion previously made to the Commissioner by the Association of Immigration and Nationality Lawyers, urging that special inquiry officers be granted additional powers in this and other regards.[2] In the absence of any other evidence on the subject, we are justified in concluding that the regulations were amended for the purpose of granting such additional powers to special inquiry officers, rather than for the purpose of immunizing District Directors' detention determinations from further administrative review under these circumstances.[3]

In construing regulations we must try to comport with and not frustrate the Congressional intent, *Pierno* v. *INS,* 397 F.2d 949 (2 Cir., 1968). We are satisfied that our construction of the language in question is in keeping with the Congressional intent underlying section 242(a) and (c) of the Act, as construed by the courts. We are not persuaded that our decision on jurisdiction in *Matter of Au* was erroneous or that its rationale is not equally applicable here.

We hold that the special inquiry officer had jurisdiction and should have entertained the respondent's renewed request for release on bail.

## 2. *The exercise of discretion*

The special inquiry officer's alternate basis for decision is that,

---

[2] That suggestion, among others, was embodied in a letter to the Commissioner dated March 1, 1967 and published in the Association's *Immigration Bar Bulletin,* Vol. XX, No. 1, January–June, 1967, at pages 5–6.

[3] No one has suggested that the Commissioner's regulation, if construed as impinging on our appellate jurisdiction, collides with the Attorney General's regulation defining our appellate jurisdiction. In view of our construction of the regulation, that question is not relevant.

assuming he has jurisdiction, relief should be denied in the exercise of discretion. Since the respondent is already in court and since the court has undoubted power to release, goes the argument, in deference to the court the question of release should be left to the court, which is in the best position to determine whether the litigation can be promptly disposed of. This approach seems to have surface plausibility and appears to be a reasonable one. Our task would be lighter if we could agree with it; but we cannot.

In recent months, counsel for the respondent has filed similar motions to reopen and on the same grounds in scores of other cases. The Service's trial attorneys have promptly filed oppositions, the special inquiry officers have promptly denied the motions, appeals to this Board have been expedited and promptly dismissed. At the oral argument before this Board, counsel for the respondent stated that petitions for review under section 106(a) of the Act are now pending in such cases in the Courts of Appeals for the Second and Third Circuits.

The one factor that distinguishes respondent's case from the others is that respondent is in custody. His continued detention is not sought because he is a security threat or a poor bail risk. Indeed, no satisfactory answer has been supplied to us as to why it is so important that he be continued in detention pending termination of the court action. The Service apparently considers his constitutional argument frivolous and his litigation purely dilatory. It is understandably anxious to have the litigation terminated adversely to the respondent as soon as possible, so that it can deport him. It has urged his attorney to agree to accelerated court procedures, without success. Under the circumstances, since no other plausible reason suggests itself, we can only infer that his continued detention is sought as added leverage, to exact an agreement to accelerated procedures which would otherwise not be forthcoming. In *Matter of Au, supra,* we concluded that detention for such a purpose is impermissible. We adhere to that view. Although our responsibilities, like the special inquiry officers', are essentially quasi-judicial in nature, this Board shares with the Service the desire for effective administration of the immigration laws. We are aware that in many instances frivolous appeals are taken purely for dilatory purposes. As we stated in *Matter of Laqui,* Interim Decision No. 1964 (BIA 1969), "Delay as an end in itself, whether achieved by obstructionism or dilatory tactics, cannot in our view be considered a legitimate objective." We attempt to discourage appeals which are clearly frivo-

lous and purely dilatory by disposing of them expeditiously. See *Matter of Holguin,* Interim Decision No. 2013 (A–19052331 and A–19052332, November 19, 1969).

The heavily overburdened courts are also confronted with similar attempts at frivolous and dilatory litigation. Summary procedures have been devised to cope with the problem. See, e.g., *Murphy* v. *Houma Well Service,* 409 F.2d 804 (5 Cir., 1969). With increasing vigor, the courts have recently commented on the fact that in immigration cases frivolous appeals have been taken solely for purposes of delay, e.g., *Wong Kam Cheung* v. *INS,* 408 F.2d 35 (2 Cir. 1969); *Chung Chaw Wa* v. *INS,* 407 F. 2d 854 (1 Cir. 1969); *Ngai Chi Lam* v. *Eesperdy,* 311 F.2d 310 (2 Cir. 1969). In this climate of judicial opinion, it should not be too difficult for a United States Attorney to obtain expeditious consideration and prompt disposition of frivolous court litigation even in the absence of cooperation on the part of the alien's attorney.

It cannot be assumed, however, that all controversial litigation which results in delay is by that token frivolous. In our order of October 29, 1969 we characterized respondent's quest for reopening as "so clearly without merit than any further administrative stay is completely unwarranted." It does not follow from this that release from detention is also unwarranted. As we pointed out in *Matter of Au, supra,* a stay of deportation is distinct from detention and the two are governed by entirely different considerations.

Respondent's motion to reopen, tendering a constitutional issue which neither we nor the special inquiry officer may adjudicate, had to be denied. It does not follow from this that the constitutional issue itself is frivolous. That issue is properly for the courts to determine, not for us. Whatever might be our private views, the issue was neither briefed nor argued to us and we do not know on what basis respondent charges that the crewman exclusion is beyond the power of Congress. While we agree that prompt judicial resolution of the question is desirable, we do not think that detention of respondent is a proper means of achieving that end.

As for the argument and that respondent's pending litigation will not decide that issue, this is purely conjectural. In view of the tenor of our order of October 29, 1969, it may be that the respondent will urge and the court will conclude that our order confronted and effectively disposed of the motion to reopen. In any event, the special inquiry officer's calculated refusal to rule on the

motion has not contributed to a speedier disposition of the litigation.

We do not believe that deference to the Court of Appeals requires or even renders it appropriate that the question of respondent's release from detention should be referred to it for resolution. Quite the contrary, considering the intolerable burdens now confronting the courts, we think it inappropriate for a special inquiry officer or this Board on appeal to thrust upon the courts an issue which we have jurisdiction to adjudicate. The considerations involved in resolving a question of detention are entirely different from those involved in resolving the merits of the other issues. Constitutional or otherwise, now before the court. If we have jurisdiction to determine that issue, then we have the corresponding responsibility to deal with it. That responsibility may not be abdicated by passing it on to the court.

This is so a *fortiori* when we take into account the reasons underlying the recent amendment of 8 CFR 242.2(b). One of the criticisms of the former system was the delay attendant upon transmittal of records on appeal to this Board.[4] It was felt that needless detention could be avoided by having the District Director's determination reviewable in the first instance by a special inquiry officer, who was readily at hand in the Service field office. This is precisely what the amended regulation accomplished, and a statement was added showing where the special inquiry officers are stationed, 8 CFR 100.4(e), 34 Fed. Reg. 7327 (May 6, 1969).

In our system of ordered liberty, the freedom of the individual is considered precious. No deportable alien should be deprived of his liberty pending execution of the deportation order unless there are compelling reasons and every effort should be made to keep the period of any necessary detention at a minimum. Even if the court has power to order release of an alien whose litigation is before it, we should not wait for or require the court to act if in our judgment no present justification for continued detention is shown.

That is the situation here. There has been no suggestion that the respondent poses a security threat and his past performance indicates that he is a good bail risk; certainly, the contrary has not been suggested. On these facts, we believe the special inquiry officer should have ordered his release. To avoid further delay, rather than remand to the special inquiry officer we shall ourselves direct respondent's release.

[4] See the letter of the Association of Immigration and Nationality Lawyers referred to in footnote 2, above.

ORDER: It is ordered that the appeal be sustained and that the respondent be released on delivery bond in the sum of $1500.00, subject to such reasonable conditions as the District Director may fix.

### Service Motion for Reconsideration
(January 8, 1970)

The Immigration and Naturalization Service hereby moves for reconsideration of the Board's decision of November 21, 1969. The case before the Board concerns an alien who had surrendered for deportation, and who thereafter applied for release on bail upon filing a petition for review in the United States Court of Appeals for the Second Circuit. When the district director denied this application he sought to renew it before a special inquiry officer. The special inquiry officer likewise denied the application, finding himself powerless to consider it and stating that if he had such power he would have denied the application in the exercise of discretion, because he believed the application for release should have been addressed to the court in which the case was pending. Upon appeal the Board reversed, holding that the special inquiry officer and the Board have authority to review such custody determinations, and ordering that the alien be released on $1500 bond during the pendency of the court proceedings. Although disposed to question that determination, we recognized that further consideration might be prolonged and therefore agreed to release the alien on bond. However, we noted, and the Board agreed, that in authorizing such release we were reserving our right to seek reconsideration of the Board's decision.

Under the statute, the special inquiry officer performs "such duties . . . as the Attorney General shall prescribe". Section 101 (b) (4), Immigration and Nationality Act, 8 U.S.C. 1101 (b) (4). The Attorney General has delegated to the Commissioner, except in regard to the authority conferred on the Board, all his authority "to direct the administration of the Service and to enforce the act". 8 CFR 2.1. Under this delegation it is clear that the special inquiry officer's authority is defined by the Commissioner and that his designation of that authority, as expressed in the regulations he promulgates, is controlling.

The Board is mistaken in finding that the 1969 amendments of the regulations were designed by the Commissioner to give the special inquiry officer authority to review all custody determinations of the district director. On the contrary, the sole purpose of the 1969 amendment of the regulations was to permit expedited

465

custody determinations by adjudicative officers, while the matter was in the process of administration adjudication. This is shown by the March 1, 1967 request of the Association of Immigration and Nationality Lawyers, referred to in the Board's opinion. The Association felt that the procedure then in effect, described by them as "antiquated", was too slow since the hearing often was concluded before the custody appeal was resolved. The Association's letter stated:

It may be noted also that giving the Special Inquiry Officer power to fix bond would also serve, in part, to relieve the situation created by the antiquated system of appeal from bond determinations by the District Director. By the time a bond appeal is taken, the record made up and transmitted to the Board of Immigration Appeals, argument had on the appeal and decisions rendered by the Board, three or four weeks have elapsed, the hearing had been held and much of the purpose for the release has been lost.

The limited purpose of the amended regulation, 8 CFR 242.2(b), is depicted in the following language, which was added at the time of the 1969 amendment:

Consideration under this paragraph by the special inquiry officer of an application or request of an alien regarding custody or bond shall be separate and apart from any deportation hearing or proceeding under this Part, and shall form no part of such hearing or proceeding or of the record thereof.

In any event, the Board has misread the purpose and scope of the 1969 amendments to the Service regulations in holding that they conferred authority on a special inquiry officer to review custody determinations after the alien has surrendered for deportation. On the contrary, as I have indicated, those regulations were designed to give a special inquiry officer authority to review custody determinations only while the administrative process was pending, whether in its initial stages or during consideration by a special inquiry officer or the Board. They definitely were not intended by the Commissioner to confer on a special inquiry officer authority to review custody determinations after the alien had surrendered for deportation and while judicial review was pending.

The acceptance of this conclusion would normally require dismissal of the appeal, which challenges the special inquiry officer's conclusion that he had no jurisdiction and asks that his decision be reversed. However, this would leave unresolved the authority of the Board to entertain appeals from determinations of the district directors under like circumstances. In *Matter of Au*, Interim Decision No. 1939 (1968), the Board found that it could review the district director's custody determinations (under the regulations then in effect) where the alien had brought proceedings for judicial review, with a resultant stay of deportation, since depor-

466

tation was no longer imminent. In the instant case, the Board reaffirmed that conclusion of *Matter of Au*. Since this is a recurring issue, of considerable importance in the administration of the immigration laws, we agree that the Board can treat this as an appeal from the custody determination of the district director, in order to reconsider its decisions in *Matter of Au* and in the instant case.

We had reservations about *Matter of Au*, when it was decided. However, at that time we did not seek reconsideration in the belief that the decision would result in no serious administrative difficulties. We had in mind the Board's earlier decision in *Matter of Guerra*, Interim Decision No. 1914 (1968), and the indication in *Matter of Au* that the Board would not be disposed to reverse the district director's custody determinations when early conclusion of the deportation proceedings could be anticipated and deportation was reasonably imminent. The special inquiry officer's observations in the instant case have led us to reexamine the principle of *Matter of Au*, as endorsed in the instant case.

The Board has frequently recognized that it is a body of limited jurisdiction, whose authority depends entirely upon the Attorney General's regulations. Thus, the Board does not sit to review actions of other administrative officers, except to the extent that the Attorney General's regulations confer such power. See 1 Gordon and Rosenfeld, *Immigration Law and Procedure* (Rev. Ed.) §1.10c, and cases there cited. I know the Board will agree that it would be empowered to review the custody determinations challenged here only if appellate jurisdiction is sanctioned by the regulations.

Thus the issue we confront solely concerns the proper interpretation of the regulations. The basic regulation is 8 CFR 3.1(b), which provides:

Appeals shall lie to the Board of Immigration Appeals from the following:
* * *
(7) Determinations relating to bond, parole, or detention of an alien as provided in Part 242 of this chapter.

The relevant portion of Part 242 is 8 CFR 242.2(b), which since 1954 has given to the Board authority to review custody determinations, originally of district directors and more recently of special inquiry officers. However as the Board notes, since its inception in 1954 this regulation has contained a reservation, which now reads as follows:

The foregoing provisions regarding the renewal of an application or request for a determination by a special inquiry officer, and appeal therefrom to the Board of Immigration Appeals shall not apply when the Service notifies the

alien that it is ready to execute the order of deportation and takes him into custody for that purpose.

If, as we urge, the special inquiry officers are not authorized to review the custody determinations in question, the first portion of this quoted language could be read as excluding any appeals. However, this language was added by the 1969 amendments which granted limited powers to the special inquiry officers. Before its amendment in 1969, the pertinent sentence of 8 CFR 242.2(b) read as follows:

The foregoing provisions concerning notice, reporting, and appeal shall not apply when the Service notifies the alien that it is ready to execute the order of deportation and takes him into custody for that purpose.

The language in question had been in the regulations, without substantial change until the 1969 amendments, since the Attorney General in 1954 gave the Board appellate jurisdiction to review custody determinations. We agree that only the Attorney General can alter the Board's appellate jurisdiction (see 28 CFR 0.105, 0.115, 8 CFR 2.1), and that the 1969 amendments of the Service regulations were not intended to affect any existing authority of the Board. Admittedly, the 1969 amendments have clouded this aspect of the procedural pattern, in declaring that no appeal shall lie from a district director's decision. On the other hand, the regulations of the Department of Justice still provide, 28 CFR 0.115(e), that the Board has appellate jurisdiction to determine appeals from decisions of regional commissioners or district directors on custody issues. Some adjustment of the regulations obviously is required. However, in the meantime we concede that in cases where the special inquiry officers have no jurisdiction the Board retains jurisdiction to review the district director's custody determinations, to the extent that it previously had jurisdiction in such cases.

A restrictive interpretation appears, on its face, to be consistent with the language of the regulation, which declares that the provisions for appeal to the Board "shall not apply when the Service notifies the alien that it is ready to execute the order of deportation and takes him into custody for that purpose." That is literally what happened here and in *Matter of Au,* for in each instance the Service notified the alien that it was ready to proceed with deportation, and took him into custody for that purpose. Therefore, under a literal reading of the regulation it can reasonably be contended that the Board has no authority to hear an appeal from a determination refusing release from such custody under such circumstances.

However, since the issue concerns the Board's jurisdiction

under the Attorney General's regulation, I have deemed it appropriate to study the history of the regulation at the time of its adoption in 1954. The regulation in question developed out of the judicial proceedings of one Anthony Pino (Service file A–2136979) challenging an order for his deportation. Pino had been denied release on bail by the Service and by the lower courts during the pendency of the judicial proceedings. When his case reached the Supreme Court, Pino again sought release on bail. The Supreme Court asked the Solicitor General, Simon E. Sobeloff, to advise it regarding the Attorney General's exercise of his power to admit to bail. The Attorney General directed the Solicitor General and this Service to conduct a review of the existing procedures, and designated his Executive Assistant, Charles M. Metzner, to participate in such review.

The Service at that time urged that it had no authority to grant release on bail while a case was pending in court. The Solicitor General rejected this view, stating that there was coordinate authority in the courts and the Service to grant such release, and that it was desirable for the Service to exercise such authority, whenever release was appropriate. The Solicitor General then suggested the desirability of establishing an administrative review procedure in custody cases. He designated his chief assistants, Oscar H. Davis and Philip Elman, to work with me on a draft embodying the revised procedures. The draft was submitted to the Attorney General, Herbert Brownell, Jr., and approved by him. Participating in the discussions, on behalf of the Service, were Commissioner-designate Joseph M. Swing, General Counsel L. Paul Winings, and myself.

The Solicitor General then addressed to the Supreme Court a letter dated May 19, 1954, copy of which is attached, informing it of the new procedures that were being adopted, and advising it that Pino had been released on bond. Regulations to codify the conclusions announced to the Supreme Court were thereafter promulgated.

In the light of the foregoing background it is clear that the 1954 regulations were adopted primarily to recognize the authority of the Service to grant release on bond while court proceedings were pending. In the light of the foregoing background the service cannot support the special inquiry officer's view that the pendency of judicial proceedings ousts it of jurisdiction to consider release on bail.

This does not necessarily dispose of the problems presented by the literal reading of the last sentence of 8 CFR 242.2(b), speci-

fying that appeals to the Board do not lie when the alien is taken into custody for the purpose of deportation. Again I believe our interpretation is controlled by the underlying purpose, as shown by the discussions and expressions in 1954. The new appellate procedure in custody cases was adopted at that time in the light of a pending litigation, and was obviously intended to apply in other situations where litigation was protracted. We believe, therefore, that the Board has arrived at a correct assessment of its authority under the present regulations. When the alien is in custody for deportation and the Service is proceeding to execute the deportation order, the regulation precludes appeals to the Board from the district director's custody determinations, as the Board held in *Matter of Guerra,* Interim Decision No. 1914 (1968). However, when deportation is thereafter stayed by judicial review proceedings, and deportation therefore is not imminent, *Matter of Au,* Interim Decision No. 1939, correctly holds that the Board has authority to review the district director's custody determinations.

As the Board has suggested in *Matter of Au* and in the instant case, this does not mean that release will be granted in every such case. There is still room for the exercise of discretion by the district director. I believe that in many instances it may be desirable to refuse release on bail, particularly where the litigation is patently frivolous and its early disposition by the court can be anticipated. In such cases, it seems preferable that any release applications be addressed to the court, which can then view the entire controversy before it and make an appropriate disposition.

There is no doubt that the court, having control of the litigation, can entertain an application for release on bail while a petition for review or a habeas corpus proceeding is pending before it. In fact, the courts have entertained such applications on a number of recent occasions. Thus in the well known *De Lucia* case the United States Court of Appeals for the Seventh Circuit granted an application for release on bail while a petition for review and an appeal from denial of habeas corpus were pending before it. On the other hand, in the *Santo Librici* case, the United States Court of Appeals for the Second Circuit denied release on bail in July, 1968 and, in August, 1968 Justice Harlan of the United States Supreme Court likewise refused bail. The petition for review was denied October 10, 1968 and the petitioner was thereafter deported. In the case of *Lee Puo Fen,* the Second Circuit on July 1, 1969 denied release on bail while the case was pending before it. The court's consideration of the matter was

more protracted than originally anticipated, and its decision has not yet been announced. In the light of this delay, and at the suggestion of Judge Moore, the Service itself has directed the alien's release on bail.

The Service shares the Board's belief that bail should not be denied for punitive reasons. We anticipate that in most instances release on bail will be authorized administratively during the pendency of judicial proceedings. However, we submit that when the litigation is patently frivolous administrative release on bail should be denied in the exercise of discretion. In such cases, the alien would not be without remedy, since he could apply to the court. Possibly the court will grant release, as it did in *De Lucia*. In other situations, as in *Librici* and *Lee Pao Fen*, the court will refuse release because it deems the issues insubstantial and anticipates little delay in completing the case. In still other situations the court may expedite its consideration.

The substantive issue presented in the court proceedings here concerns the constitutionality of Section 203 (a) (7) of the Act, 8 U.S.C. 1153 (a) (7). While I deem this an insubstantial issue, settled in previous litigation, the petition for review is not amenable to a motion to dismiss as frivolous, and no such motion to dismiss is contemplated. Since the litigation will not be disposed of for some time the alien should have been released on bail and the Board's order directing such release was proper.

The views expressed herein relate to the interpretation of the regulations in their present form. Some modification of those regulations may be in order and we expect to consider the desirability of such modifications in the near future. However, this is an extraneous consideration in the present posture of this case.

The Service therefore urges that the Board modify its order of November 21, 1969, insofar as it finds the special inquiry officer authorized to review the district director's custody determination in the instant case. As indicated above, we believe the Board can regard this as an appeal from the district director's determination and that it can entertain such an appeal. The Service does not object to the Board's exercise of discretion in authorizing the alien's release on bond in the instant case.

APPENDIX

May 19, 1954

Hon. Harold B. Willey
Clerk.
Supreme Court of the United States,
Washington, D.C.

471

Dear Mr. Willey:

There is pending before the Court an application for bail, referred to it by Mr. Justice Frankfurter, in the case of *Anthony Pino* v. *Nicolls*. I advised you by telephone on Friday last, May 14, that the Attorney General is giving fresh consideration to this case in connection with a general review of existing administrative procedures relating to detention or release of aliens under final orders of deportation. I requested the Court, through you, to defer action on the pending *Pino* application until this week, in order to enable the Attorney General to complete his review of both the particular case and the general procedures applicable to cases of this category, and you informed me Monday morning, May 17, that the Court had granted this request.

On May 13, 1954, I received a letter of that date from Mr. Charles Hallam, Associate Librarian, stating that the Court desires to be advised of "the procedure followed in the exercise by the Attorney General of his power to admit to bail an alien under warrant for deportation.

Since the two matters are related, I think it appropriate that the position of the Department of Justice with respect to both be stated in this letter.

1. *The present practice relating to detention or release of aliens under final orders of deportation.* Under Section 242(c) of the Immigration and Nationality Act of 1952, the Attorney General is given discretion to determine whether, and on what conditions, an alien may be released on bond. 8 CFR 242.3(b) delegates that authority to the District Director, Deputy District Director, District Enforcement Officer, or officer in charge having administrative jurisdiction over the place where the alien is detained. In addition, 8 CFR 9.6 and 9.4 reserve to the Commissioner and to the Assistant Commissioner (Division of Detention, Deportation and Border Patrol) coordinate authority in such cases.

Upon the entry of a final deportation order, the field officer in charge of the district determines whether the alien shall be detained, or admitted to or continued in bail, while efforts are being made to execute the deportation order. Such determinations ordinarily are made at the local level without consultation with the central office of the Immigration and Naturalization Service. There is no provision for formal appeal or general practice of internal review. However, attorneys and other interested parties often request review in the central office when bail has been denied, and upon such request the field office determination is reviewed. The authority to grant or deny bail exercised in accordance with criteria set forth in existing internal operations instructions issued by the Service.

2. *Changes to be made in procedures governing bail applications in deportation cases.* After review of the existing practices, and upon the joint recommendation of the Solicitor General and the new Commissioner of the Immigration and Naturalization Service, the Attorney General has directed that the following changes be made in the Departmental procedures and policies governing bail applications in deportation cases:

a) In order to provide a quasi-judicial review by a body within the Department of Justice which is independent of enforcement activities, the present regulations will be amended to authorize an appeal by the alien to the Board of Immigration Appeals in every case in which action is taken by the Immigration and Naturalization Service with respect to bail, parole, or detention. To forestall dilatory appeals, the appeal will be required to be taken within a limited time and the Board will be directed to give priority to such

appeals. The mere filing of an appeal will not operate to disturb the custody of the alien or to stay the administrative proceedings.

(b) In order to enable the central office of the Immigration and Naturalization Service to review cases, at its option, and to avoid unnecessary appeals, the regulations will be amended to provide for notification by the field office to the central office of the Service of all actions denying administrative bail.

(c) In order to clarify the Government's position with respect to the allowance of administrative or judicial bail during the pendency of judicial proceedings, by habeas corpus or otherwise, challenging the validity of a final deportation order, instructions will be issued to the Immigration and Naturalization Service, to the various divisions of the Department of Justice, and to the United States Attorneys, that (1) notwithstanding the pendency of the judicial proceedings, the Department shall consider on its merits any application for administrative bail, and (2) that representatives of the Department shall not oppose the authority of the court to grant judicial bail during the pendency of the judicial proceedings.

3. *The Pino case.* Upon further consideration of the application for administrative bail previously made by Anthony Pino pending review by habeas corpus of the validity of the final order of deportation entered against him, the Department of Justice has concluded that such application should be granted and the Immigration and Naturalization Service has taken the necessary actions to effect his release on bond. I am advised that he is no longer in custody. Accordingly, Pino's application for judicial bail now before the Court has become moot.

Sincerely yours,
Simon E. Sobeloff,
Solicitor General.

cc: Charles Hallam, Esq.,
Associate Librarian,
Supreme Court of the United States,
Washington, D.C.

**BEFORE THE BOARD**
(February 13, 1970)

This is an unopposed Service motion by its General Counsel for reconsideration and modification of our opinion entered in this case on November 21, 1969. That opinion culminates in an order directing respondent's release on bond. On this motion, the Service does not challenge our jurisdiction to direct such release and concedes that our order directing release was proper. What the Service now asks is that we retrace and modify the route by which we concluded we acquired jurisdiction to enter that order.

The facts are fully stated in our opinion of November 21, 1969 and need not be repeated at length. The respondent, a concededly deportable alien crewman in Service custody for deportation, filed a judicial review action raising a constitutional issue which neither the Service nor this Board has power to adjudicate. The Dis-

trict Director felt that deportation was automatically stayed during the pendency of the litigation but denied respondent's application for release on bail. On renewal of the application for release before a special inquiry officer pursuant to 8 CFR 242.2(b), as amended, the latter held that he lacked power under that regulation to grant the relief requested; and that, even if such power existed, bail should be denied as a matter of discretion. In our opinion of November 21, 1969, relying on the rationale of *Matter of Au,* Interim Decision No. 1939 (BIA 1968), we decided that the special inquiry officer was in error in both regards and we sustained the appeal.

In *Matter of Au, supra,* we construed 8 CFR 242.2(b) at a time when it specifically authorized a direct appeal to this Board from the District Director's adverse determination. That regulation was thereafter amended, 34 Fed. Reg. 7327 (May 6, 1969), and the provision for appeal to this Board from the District Director's detention determination was in terms eliminated: "No appeal shall lie from such determination." However, provision was made for renewal of the release application before a special inquiry officer and his decision was made appealable to this Board. The amended regulation thus provided what is in effect an additional and intermediate review of the District Director's bail determination, with ultimate administrative decision in this Board on appeal. We therefore saw no reason to raise the question whether the language just quoted from the Commissioner's regulation improperly impinged on the appellate jurisdiction delegated to this Board by the Attorney General. See footnote 3 of our November 21, 1969 opinion.

In the motion now before us, the Service agrees that only the Attorney General may alter this Board's appellate jurisdiction and that the 1969 amendments of the Service regulations were not intended to affect any existing authority of the Board. The General Counsel, after extensive research into the origins of the regulations in question, concedes that it confirms our jurisdictional holding in *Matter of Au, supra.* He insists, however, that the 1969 amendments were intended to confer only limited authority on the special inquiry officers; and that the restrictive language in question [1] curtails the power of special inquiry

_____

"The foregoing provisions regarding the renewal of an application or request for a determination by a special inquiry officer and appeal therefrom to the Board of Immigration Appeals, shall not apply when the Service notifies the alien that it is ready to execute the order of deportation and takes him into custody for that purpose."

474

officers, though not of this Board, once the alien is taken into custody for deportation. Thereafter, goes the argument, the alien's only recourse from a District Director's detention determination is a direct appeal to this Board; and we are asked to regard this case as a direct appeal from the decision of the District Director rather than from that of the special inquiry officer.

From the materials cited to us, we are now satisfied that the Commissioner did intend, by the language of the amended regulation, to foreclose intermediate review of a District Director's detention determination by a special inquiry officer once the alien is notified to surrender for deportation and is taken into custody for that purpose. The language employed is susceptible of the construction contended for, and the Commissioner has undoubted power to promulgate such regulations prescribing the duties of special inquiry officers.[2] We therefore have no alternative but to recede from our prior holding that the special inquiry officer had jurisdiction to rule on the bail application in the circumstances of this case.

The Service motion suggests that we regard this case as a direct appeal from the District Director's determination. If, as we now hold, the amended regulation precludes special inquiry officers from exercising jurisdiction under these circumstances, a literal reading of the provision barring appeal from the District Director's decision would have the effect of diverting the Board of the appellate jurisdiction, conferred by the Attorney General, which it had previously exercised. Such ouster was concededly not intended by the Commissioner; indeed, it would have been beyond his power. We are therefore justified in reading the regulation as precluding appeal to this Board only in those instances where there is still available the right to apply for release to a special inquiry officer and to appeal to this Board from his decision. Substantial justice requires that we regard this case as having come here on direct appeal from the District Director's decision.

While the needs of this case can thus be met, we agree with the General Counsel that the regulations should be revised to reflect clearly to all concerned the remedies available and the pertinent procedures. Publication of this opinion, our prior opinion, and the Service motion should help to apprise the public of the gloss we have placed on the regulations in question; but this cannot satisfactorily substitute for a lucid restatement of the provisions under review.

---

[2] See Immigration and Nationality Act, sections 101(b)(4), 103(a)(b), and 242(b); 8 C.F.R. 2.1.

We may safely assume that, in those instances where a District Director denies an application under circumstances which preclude renewal before a special inquiry officer, the Service will appropriately notify the alien of his right, if any, of direct appeal to this Board and of the pertinent procedures.

**ORDER:** It is ordered that our opinion and order dated November 21, 1969 be amended to accord with the views herein expressed and, as so amended, be affirmed.