## MATTER OF ANDRADE

In Bond Proceedings Pursuant to 8 C.F.R. § 242.2(b)

A-12271705

*Decided by Board November 20, 1987*

(1) In bond redetermination proceedings, the Board of Immigration Appeals may consider the respondent's extensive and recent criminal record in determining the necessity for a bond or the appropriate amount of a bond.

(2) The Board determined that the respondent's numerous convictions indicate a consistent disrespect for the laws of the United States and adversely reflect upon his character.

(3) In setting a substantial bond, the Board took into consideration the respondent's disrespect for the law, his poor character, and the effect of his crimes upon his eligibility for relief from deportation.

(4) An alien's early release from prison and transition to a parole status do not necessarily reflect rehabilitation, and, therefore, such facts do not carry significant weight in determining whether he is a good bail risk for immigration purposes.

ON BEHALF OF RESPONDENT:          ON BEHALF OF SERVICE:
Pro se                            Ronald E. LeFevre
                                  District Counsel
                                  Beverley M. Phillips
                                  General Attorney

BY:   Milhollan, Chairman; Dunne, Morris, and Vacca, Board Members. Concurring Opinion: Heilman, Board Member.

The Immigration and Naturalization Service has appealed from an immigration judge's February 27, 1987, decision releasing the respondent on his own recognizance, after the district director had set bond at $15,000. The appeal will be sustained and the bond will be raised to $10,000.

By Order to Show Cause, Notice of Hearing, and Warrant for Arrest of Alien (Form I-221S) dated February 20, 1987, the respondent was alleged to be a native and citizen of Mexico who was admitted to the United States on April 9, 1960, as a lawful permanent resident, but who was deportable for having been convicted of two crimes involving moral turpitude. *See* section 241(a)(4) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(4) (1982). At

488

the time the Order to Show Cause was issued, the district director ordered a $15,000 bond. Following a bond redetermination hearing, the immigration judge determined that release on recognizance was appropriate for several reasons. She noted that the respondent had been a lawful permanent resident since the age of 3 and that his entire family are United States citizens or lawful permanent residents. The immigration judge found that, although the respondent had a criminal record, there was no evidence that he had ever failed to appear for immigration or criminal proceedings. She relied on the fact that the state parole authorities had granted the respondent early release. Such release, stated the immigration judge, "demonstrates an assessment by experts, who are better qualified than I am on such matters, that he is rehabilitated and does not constitute a threat to public safety," and that he is not likely to abscond. In addition, the immigration judge considered the respondent's possible eligibility for a waiver of deportation under section 212(c) of the Act, 8 U.S.C. § 1182(c) (1982). She expressed the view that the respondent has "many factors in his case which would militate toward a favorable exercise of discretion" on a section 212(c) application and that the respondent would therefore have every reason to appear for deportation proceedings to pursue this remedy. Citing *Matter of Kwun*, 13 I&N Dec. 457 (BIA 1969, 1970), the immigration judge held that the respondent should not be denied bail "for punitive reasons, nor should the alien be deprived of his liberty pending deportation proceedings unless there are compelling reasons." She concluded that the decision to impose a $15,000 bond "reflects the displeasure" of the Service at the respondent's criminal record. Finding that the respondent was "not a flight risk," she released him on his own recognizance.

The Service has filed a lengthy brief on appeal detailing why, in its view, the immigration judge's decision should be vacated and a substantial bond set. Without addressing each of the Service's contentions specifically, we agree that a substantial bond is necessary in this case.

We have held that an alien generally should not be detained or required to post bond pending a determination of deportability unless there is a finding that he is a threat to the national security or is a poor bail risk. *Matter of Patel*, 15 I&N Dec. 666 (BIA 1976). In determining the necessity for and the amount of bond, such factors as a stable employment history, the length of residence in the community, the existence of family ties, a record of nonappearance at court proceedings, and previous criminal or immigration law violations may properly be considered. *See id.; Matter of San Martin,*

15 I&N Dec. 167 (BIA 1974); *Matter of Moise,* 12 I&N Dec. 102 (BIA 1967); *Matter of S-Y-L-,* 9 I&N Dec. 575 (BIA 1962).

In the present case, the respondent does have a very long residence in this country, having lived here virtually all his life. He also has his family living here. However, he does not have a stable employment history. Indeed, during much of the last 12 years the respondent appears to have been engaged in criminal activity or incarcerated for his crimes. The respondent was convicted in 1975, as a juvenile, for attempted robbery. He was convicted of burglary twice, in 1981 and in 1985. In 1986, he was convicted of receipt of stolen goods. He was sentenced to 16 months' imprisonment for this crime and was released on probation in February of 1987. On April 1, 1987, the respondent was convicted for receiving stolen property.

We consider the respondent's extensive and recent criminal record to be a very serious matter militating against his release without a significant bond. While we do not consider a criminal record per se a reasonable basis for a high bond amount, we find it a relevant consideration in determining the necessity for or the appropriate amount of bond insofar as it relates to a respondent's character. More importantly, we find a conviction record relevant to a respondent's bond status to the extent that it relates to his potential eligibility for relief from deportation, which in turn may be an incentive or disincentive for him to appear at his deportation hearing. A respondent with a greater likelihood of being granted relief from deportation has a greater motivation to appear for a deportation hearing than one who, based on a criminal record or otherwise, has less potential of being granted such relief.

In the case at hand, the respondent's numerous convictions indicate a consistent disrespect for the laws of the United States and adversely reflect upon his character. A respondent's character is one of the factors we consider in determining the necessity for or the amount of a bond. Further, we do not agree with the immigration judge that the respondent's early release from prison on parole in February of 1987 indicates that he is rehabilitated and is unlikely to abscond. Indeed, we find that the immigration judge placed undue reliance on the respondent's parole in reaching her decision. Incarcerated individuals may be released from prison early on parole for reasons other than rehabilitation. We do not believe this factor in and of itself carries significant weight in determining whether an alien is a good bail risk for immigration purposes. We note that in this particular case the respondent was convicted on another criminal charge only 2 months after his release on parole. Under these facts, we are unwilling to assume, as the immigration

judge did, that the respondent's release on parole indicates his rehabilitation, and we are not persuaded that such parole warrants his release without bond in these proceedings.

More significantly, while we agree with the immigration judge that an alien's potential eligibility for relief from deportation can reflect on the likelihood of his appearance at deportation proceedings, we believe she placed undue weight on this respondent's eligibility for section 212(c) relief. While the respondent obviously has equities which could weigh in favor of a grant of that relief, there also are very serious adverse factors militating against a grant of discretionary relief. Without ruling on the merits of such an application, a matter beyond the scope of our review in these bond proceedings, we conclude that the respondent's potential eligibility for relief under section 212(c) of the Act does not warrant his release without bond or on a minimal bond. While the respondent may appear statutorily eligible for such relief, his lengthy and recent conviction record negatively affects the discretionary grant of the same, thereby giving him less motivation to appear at his deportation hearing.

We emphasize that the setting of a substantial bond in this case does not represent punishment to the respondent for his crimes, an inappropriate action for the Board, the immigration judge, or the district director to take. Rather, it reflects our conclusion that the respondent's crimes, combined with the other evidence of record, negatively affect the likelihood of his future appearance such that his release on a lower bond is not warranted. We note further that the Service has informed us that the respondent failed to appear for a scheduled deportation hearing on June 17, 1987, and that the respondent has not challenged this information.

Upon consideration of the totality of the circumstances in this case, we find that a $10,000 bond is necessary to ensure the respondent's appearance at future immigration proceedings. Accordingly, the Service's appeal will be sustained and the following order will be entered.

ORDER: The appeal is sustained and the respondent is ordered held on bond in the amount of $10,000.

*Concurring Opinion*: Michael J. Heilman, Board Member

I respectfully concur.

This appeal may be sustained on the ground that the respondent failed to appear for his scheduled deportation hearing. This is clear evidence that a bond is required to assure his appearance. While this factor arose subsequent to his filing of the bond appeal, in my view it may be taken into account where, as here, the respondent

has had an opportunity to respond to the adverse information, and has failed to do so.

The majority's reliance on "character" as evidenced by his criminal convictions, as a basis to require a substantial bond, strikes me as likely to cause more problems than it will resolve. Since the term "character" is fairly nebulous, it may be seen as incorporating all types of behavior which would have little bearing on the possibility of an alien absconding. I assume that the majority would limit the application of character determinations to egregious criminal behavior, and not to such factors as personal living arrangements, or the acceptance of welfare, or other similar indices of "bad" character.