# Matter of C-M-M-, Applicant

*Decided by Board June 13, 2025*[1]

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

The applicant's extensive and lengthy history of immigration law violations, including multiple removals and illegal reentries, demonstrates that she poses a significant flight risk, such that no monetary bond would be sufficient to ensure her appearance at future immigration hearings and, if necessary, her surrender for removal from this country.

FOR THE APPLICANT:  Lauren Hodges, Esquire, Tucson, Arizona

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Michele A. Peters, Assistant Chief Counsel

BEFORE:  Board Panel:  MULLANE, GOODWIN, HUNSUCKER Appellate Immigration Judges.

GOODWIN, Appellate Immigration Judge:

The Department of Homeland Security ("DHS") appeals from the Immigration Judge's March 19, 2025,[2] decision, granting the applicant's request for a custody redetermination hearing and releasing her from DHS custody upon the posting of a $15,000 bond coupled with alternatives to detention at the discretion of DHS.  The applicant, a native and citizen of Mexico, opposes the appeal.  We will sustain DHS' appeal, vacate the Immigration Judge's bond decision, and deny the applicant's request for a redetermination of her custody states.

We disagree with the Immigration Judge's determination that DHS did not meet its burden to demonstrate that the applicant is a danger to the community or alternatively, a flight risk.  Whether an alien poses a danger to the community is a question of judgment that we review de novo, but the

---

[1]  Pursuant to Order No. 6318-2025, dated July 8, 2025, the Attorney General designated the Board's decision in *Matter of C-M-M-* (BIA June 13, 2025), as precedent in all proceedings involving the same issue or issues.  *See* 8 C.F.R. § 1003.1(g)(3) (2025).  Editorial changes have been made consistent with the designation of the case as a precedent.

[2]  On April 2, 2025, the Immigration Judge issued a written bond memorandum in support of the bond order.

factual findings underlying such a judgment are reviewed for clear error. *See* 8 C.F.R. § 1003.1(d)(3)(i)–(ii) (2025). Upon our de novo review, we conclude that the Immigration Judge erred in holding that DHS did not prove by clear and convincing evidence that the applicant poses a danger to the community. *See Franco-Gonzalez v. Holder*, No. CV 10-02211 (DTBx), 2013 WL 8115423 (C.D. Cal. Apr. 23, 2013) (holding that certain aliens cannot be detained for more than 180 days unless DHS proves by clear and convincing evidence that the alien presents a danger to the community).

Specifically, the Immigration Judge's finding that the Maricopa County Superior Court did not order a sentence of imprisonment, which the Immigration Judge found significantly indicated that the applicant's incarceration was not necessary to protect the public, is clearly erroneous. The applicant pled guilty to Aggravated Assault Causing Serious Physical Injury under Arizona law, and the criminal court ordered her to serve 7 months in county jail with credit for time served. The applicant was also sentenced to supervised probation for a term of 4 years after her release from jail and ordered to have no contact with the victim.

The Immigration Judge also erred in finding that the applicant was not a danger to the community because she "was attempting to act in self-defense, albeit imperfectly." It is well established that neither an Immigration Judge nor this Board may look behind the fact of conviction and relitigate the ultimate question of an alien's guilt or innocence. *See Matter of Roberts*, 20 I&N Dec. 294, 301 (BIA 1991). The applicant's conviction record shows she pled guilty as the offender of domestic violence and was ordered to pay for and participate in a domestic violence offender treatment program as part of her plea agreement.

The aggravated assault conviction is recent and involved the applicant's decision to engage in violent behavior against her partner by pouring alcohol on his back and setting him on fire using a cigarette. The victim sustained burns on his head, face, and torso and had to be placed in a medically-induced coma. Additionally, the applicant has a lengthy criminal history in this country, which includes three convictions for shoplifting.

While the applicant has indicated she would stay away from the victim and follow the release plan prepared for her by the Florence Project, these assurances are not so great that they outweigh her history of dangerous behavior to persons or property. *See Matter of Siniauskas*, 27 I&N Dec. 207, 209 (BIA 2018) ("[A]ctions are a better indication of [her] future conduct than [her] assurances to the contrary."); *see also Matter of Valdez*, 21 I&N Dec. 703, 710 (BIA 1997) (explaining that past behavior is relevant to

predicting future behavior). Notably, the applicant has not yet taken responsibility for her actions, referring to it only as the "incident in 2023." Nor has she submitted evidence of her enrollment and participation in the court-ordered domestic violence offender treatment program. Overall, considering the totality of the record, DHS met its burden of demonstrating that the applicant is a danger to the community.

The Immigration Judge also determined that the applicant's history reflects a pattern of circumventing lawful, safe, and orderly immigration procedures, and when considered in conjunction with the above-referenced criminal conduct, it demonstrates her repeated disregard for the laws of the United States. Nonetheless, the Immigration Judge found that the applicant's flight risk could be mitigated by a bond of $15,000 and alternatives to detention. The Immigration Judge found that the applicant's extensive family and community ties to the United States, her proposed sponsor and fixed address, and her application for relief significantly militate against a finding that she is a flight risk. We disagree with the Immigration Judge's determination that the applicant's flight risk could be mitigated by a bond of $15,000 and alternatives to detention. *See generally Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011) (acknowledging that the fact that an alien has a final administrative order of removal is a factor to consider when determining flight risk); *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006) (discussing factors to consider when determining whether an alien merits release on bond).

The applicant was first ordered removed in 2001 and has since reentered the United States on four known occasions and has been removed three additional times. The record reflects that the applicant was advised multiple times that she was prohibited from entering the United States for a set period of years, with the final warning informing her that she was prohibited her from entering the United States for 20 years. The applicant has two illegal reentry convictions and has twice lied to Immigration Officers, alleging she is a United States citizen. On the second illegal reentry attempt, she presented her United States citizen daughter's birth certificate and identification as her own. The applicant admitted to the Immigration Officer that she knew it was illegal to present herself as a citizen or use a citizen's documents to attempt entry into the country.

The applicant is currently in withholding-only proceedings and her eligibility for relief is speculative. *See Matter of R-A-V-P-*, 27 I&N Dec. 803, 806 (BIA 2020) (acknowledging that, for various reasons, eligibility for fear-based relief can be difficult to establish); *see also Matter of Andrade*, 19 I&N Dec. 488, 490 (BIA 1987) (stating that an individual with a greater

likelihood of being granted relief has a stronger motivation to appear for a hearing than one who has less potential to obtain relief).  Overall, DHS met its burden to show that the applicant's extensive and lengthy history of immigration law violations attests to the applicant being a significant flight risk such that no monetary bond, even if coupled with alternatives to detention, would be sufficient to ensure the applicant's appearance at future immigration hearings and, if necessary, her surrender for removal from this country.  Thus, we sustain DHS' appeal, reverse the Immigration Judge's decision and order that the applicant be held without bond.  *See generally Matter of Urena*, 25 I&N Dec. 140 (BIA 2009).

**ORDER:**  The appeal is sustained.

**FURTHER ORDER:**  The Immigration Judge's March 19, 2025, custody order is vacated, and the applicant is ordered detained without bond.