# In re Hector PONCE DE LEON-Ruiz, Respondent

File A91 278 310 - Bloomington

*Decided by Board January 3, 1996*
*Decided by Attorney General June 29, 1997*
*Decided by Board on remand October 8, 1997*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Following the amendment of section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (1994), by section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, 1277, and the Attorney General's ruling in *Matter of Soriano*, 21 I&N Dec. 586 (BIA 1996; A.G. 1997), an alien who is deportable as an aggravated felon is not eligible for section 212(c) relief.

FOR RESPONDENT: Robert Dildine, Esquire, Minneapolis, Minnesota

FOR THE IMMIGRATION AND NATURALIZATION SERVICE: Terry M. Louie, General Attorney

## BEFORE THE BOARD
(January 3, 1996)

BEFORE: Board En Banc: DUNNE, Vice Chairman; HEILMAN, HOLMES, HURWITZ, COLE, and MATHON, Board Members. Concurring Opinions: SCHMIDT, Chairman; FILPPU, Board Member, joined by VACCA, Board Member. Dissenting Opinions: ROSENBERG, Board Member; VILLAGELIU, Board Member, joined by GUENDELSBERGER, Board Member.

HEILMAN, Board Member:

In a decision dated October 11, 1994, an Immigration Judge found the respondent deportable under sections 241(a)(2)(B)(i) and (a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. §§ 1251(a)(2)(B)(i) and (a)(2)(A)(iii) (1994). The Immigration Judge further determined that the respondent was statutorily ineligible for relief under section 212(c) of the Act, 8 U.S.C. § 1182(c) (1994). As a result, the Immigration Judge ordered the respondent deported from the United States to Mexico. The respondent has appealed from the Immigration Judge's decision. This appeal will be

dismissed. The respondent's request for oral argument before the Board is denied. *See* 8 C.F.R. § 3.1(e) (1995). Because of the importance of the issue, this decision is certified to the Attorney General pursuant to 8 C.F.R. § 3.1(h)(1)(ii).

## I. ISSUE

The central issue is whether the respondent can properly count his lawful temporary resident status towards the 7-year lawful domicile requirement for eligibility for a waiver under section 212(c) of the Act.

## II. FACTS

The respondent is a 29-year-old native and citizen of Mexico. He was granted temporary resident status effective on April 27, 1988, and subsequently adjusted his status under that provision to that of a lawful permanent resident on September 6, 1991.[1]

On August 26, 1993, the respondent was convicted of three counts of the sale of marihuana in the Ramsey County District Court, St. Paul, Minnesota, and was sentenced to a suspended sentence of 1 year and 1 day, 100 days of community service, and a fine of $387. The Immigration and Naturalization Service subsequently served the respondent with an Order to Show Cause and Notice of Hearing (Form I-221) on December 15, 1993, charging him with deportability under section 241(a)(2)(B)(i) of the Act, as an alien convicted of a violation of a law relating to a controlled substance, and section 241(a)(2)(A)(iii), as an alien convicted of an aggravated felony. On October 11, 1994, after a hearing, the Immigration Judge found the respondent deportable as charged. The Immigration Judge also found the respondent ineligible for section 212(c) relief, because he lacked 7 years of lawful unrelinquished domicile.

The respondent timely filed his appeal before this Board on October 18, 1994. He does not dispute the finding of deportability under section 241(a)(2)(B)(i) of the Act, but argues that the Immigration Judge improperly classified his conviction as an aggravated felony, and thus that he is not deportable under section 241(a)(2)(A)(iii) of the Act. He also challenges the

---

[1] At the respondent's hearing on October 11, 1994, the Immigration Judge took lengthy testimony on the issue of the correct dates upon which the respondent was properly deemed to have adjusted to a temporary resident and to a lawful permanent resident. We concur in the Immigration Judge's conclusion that both dates were incorrectly recorded on the Respondent's Alien Registration Receipt Card (Form I-551). The proper date upon which the respondent is deemed to have acquired temporary residence is April 27, 1988, the fee stamp date on his Application for Status as a Temporary Resident (Form I-687). 8 C.F.R. § 245a.2(s) (1995). The proper date upon which the respondent is deemed to have acquired lawful permanent residence is September 6, 1991, the date of filing of his Application to Adjust Status from Temporary to Permanent Resident (Form I-698). 8 C.F.R. § 245a.3(m) (1995).

Immigration Judge's denial of section 212(c) relief. The respondent argues that he is statutorily eligible for relief pursuant to section 212(c) because he can establish lawful unrelinquished domicile. In particular, the respondent argues that his status became lawful in 1986, when section 245A of the Act, 8 U.S.C. § 1255a (Supp. IV 1986) went into effect, and thus, he began his lawful unrelinquished domicile at that time. Alternatively, in a subsequently filed motion to remand, he argues that his lawful unrelinquished domicile began on April 27, 1988, the date that he became a temporary resident pursuant to section 245A.

## III. DEPORTABILITY FOR AGGRAVATED FELONY CONVICTION

The respondent argues that his conviction for the sale of marihuana is not an aggravated felony because under Minnesota law, such convictions are not treated harshly. As an example, he argues that Minnesota law provides for reduction of his conviction to the status of a misdemeanor upon successful completion of his probation.

We conclude that the respondent's arguments in this regard are without merit, and that the Immigration Judge properly found that the respondent's conviction constitutes an aggravated felony. The Act defines an "aggravated felony" to include "any illicit trafficking in any controlled substance (as defined in section 102 of the Controlled Substances Act), including a drug trafficking crime (as defined in section 921 of title 18, United States Code)" and states that "[s]uch term applies to offenses described in the previous sentence whether in violation of Federal or State law." Section 101(a)(43) of the Act, 8 U.S.C. § 1101(a)(43) (Supp. V 1993). The term "any illicit trafficking in any controlled substance" is commonly defined as any unlawful trading or dealing in any controlled substance. *Matter of L-G-*, 21 I&N Dec. 89 (BIA 1995); *Matter of Davis*, 20 I&N Dec. 536 (BIA 1992). The respondent was convicted on August 6, 1993, of unlawfully selling marihuana in violation of Minnesota Statutes § 152.025, subdivision 1, and was sentenced to 1 year and 1 day in prison. His offense involved a controlled substance as defined in section 102 of the Controlled Substances Act. *See* 21 U.S.C. § 812(c), schedule I(c) (1988 & Supp. V 1993). The sale of marihuana clearly involves the unlawful trading or dealing in a controlled substance. The offense is a felony.[2] Thus the respondent's conviction is "illicit trafficking" and constitutes an aggravated felony as defined in section 101(a)(43) of the Act.

In response to the respondent's argument that his conviction might be reduced to a misdemeanor upon the successful completion of his probation, we note that, for deportation purposes, the respondent is subject to a final felony conviction. It is well established that a conviction attains a sufficient

---

[2] "Felony" means a crime for which a sentence of imprisonment for more than one year may be imposed. Minn. Stat. Ann. § 609.02, subd. 2 (1994).

degree of finality for immigration purposes when direct appellate review of the conviction has been exhausted or waived. *See Matter of Ozkok,* 19 I&N Dec. 546, 522 n. 7 (BIA 1988). The availability of post-conviction motions or other forms of collateral attack does not affect the finality of the conviction for immigration purposes, unless and until the conviction has been over-turned pursuant to such a motion. *See Okabe v. INS*, 671 F.2d 863, 865 (5th Cir. 1982); *Aguilera-Enriquez v. INS*, 516 F.2d 565, 570 (6th Cir. 1975), *cert. denied*, 423 U.S. 1050 (1976); *Matter of Gabryelsky*, 20 I&N Dec. 750, 752 (BIA 1993); *Matter of Adetiba*, 20 I&N Dec. 506, 508 (BIA 1992). There-fore, the possibility that the respondent may seek to reclassify his conviction as a misdemeanor does not alter our conclusion that his conviction consti-tutes an aggravated felony.

Further, even if the respondent's conviction were reclassified as a misde-meanor, a misdemeanor conviction under state law may still be an aggravated felony for purposes of section 101(a)(43) of the Act. Even where an offense is not designated as a felony, it may nonetheless be a "drug trafficking crime" (and therefore "illicit trafficking" and an "aggravated felony") if it is analo-gous to an offense punishable under one of the federal acts specified in 18 U.S.C. § 924(c)(2) (1994), and the offense to which it is analogous is a felony under federal law. *Matter of Davis, supra,* at 541-43. The respondent's con-viction for the sale of marihuana is analogous to the offense of distribution of a controlled substance under the Controlled Substances Act. *See* 21 U.S.C. § 841(a)(1) (1994). That offense constitutes a felony under federal law, as the maximum term of imprisonment authorized exceeds 1 year. *See* 21 U.S.C. § 841(b) (1994); 18 U.S.C. § 3559 (1994). Thus, even if the respondent's conviction were to be classified as a misdemeanor under Minnesota state law, it is a "drug trafficking crime," and therefore, it constitutes "illicit traffick-ing" and an "aggravated felony" under section 101(a)(43) of the Act.

## IV. ELIGIBILITY FOR SECTION 212(c) WAIVER

A waiver of inadmissibility under section 212(c) of the Act is generally available to aliens who have been lawfully admitted for permanent residence, who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of 7 consecutive years in the United States. This form of relief is also available to lawful permanent residents who have not departed the United States and who are in deportation proceedings. *Francis v. INS*, 532 F.2d 268 (2d Cir. 1976); *Matter of Silva*, 16 I&N Dec. 26 (BIA l976); *see also Tapia-Acuna v. INS*, 640 F.2d 223 (9th Cir. 1981). Thus, eligibility under section 212(c) of the Act requires that an alien (1) be lawfully admitted for permanent residence, and (2) have 7 consecutive years of lawful unrelinquished domicile.

The respondent became a lawful permanent resident on September 6, 1991, and thus satisfies the first requirement. Only the second requirement,

whether the respondent has established 7 years of lawful unrelinquished domicile for section 212(c) purposes, is at issue in this case.

The Board has held that the acquisition of lawful domicile for purposes of eligibility under section 212(c) of the Act must be subsequent to the date of admission as a lawful permanent resident. *Matter of Anwo*, 16 I&N Dec. 293 (BIA 1977), *aff'd on other grounds*, 607 F.2d 435 (D.C. Cir. 1979); *Matter of S-*, 5 I&N Dec. 116 (BIA 1953). In 1991, the Attorney General promulgated 8 C.F.R. § 212.3(f)(2) (1991). The regulation states in part:

> (f) Limitations on discretion to grant an application under section 212(c) of the Act. A district director or Immigration Judge shall deny any application for advance permission to enter under section 212(c) of the Act if:
>
> > (2) The alien has not maintained lawful permanent resident status in the United States for at least seven consecutive years immediately preceding the filing of the application;

This provision appeared in the revisions to 8 C.F.R. § 212 published on October 3, 1991, in the form of an interim rule with request for comments. 56 Fed. Reg. 50,033-34 (1991). The Summary to this rulemaking states that the rule "amends 8 CFR part 212 to implement sections 511 and 545 of the Immigration Act of 1990, Public Law No. 101-649, 104 Stat. 4978, 5052, 5061 (1990) (IMMACT)." The Supplementary Information discusses such subjects as eligibility restrictions on certain aggravated felons and the definition of the term "admissions," but offers no specific information on 8 C.F.R. § 212.3(f)(2) itself. Thus, even if we were inclined to consult the regulatory history to this provision, if the language of the provision were ambiguous or unclear, we would not be able to do so. We are obliged to construe the language of this provision as it appears.

The Board is bound to uphold agency regulations. The Board and Immigration Judges (except as to the specific authority provided by statute) only have such authority as is created and delegated by the Attorney General. *See* section 103 of the Act, 8 U.S.C. § 1103 (1994); 28 U.S.C. §§ 503, 509, 510 (1994); *Matter of Anselmo*, 20 I&N Dec. 25, 30 (BIA 1989); *Matter of Medina*, 19 I&N Dec. 734, 742, 746 (BIA 1988). Under section 103(a) of the Act, the Attorney General has the authority to issue regulations, and her determinations with respect to all questions of law are controlling. A regulation promulgated by the Attorney General has the force and effect of law as to this Board and Immigration Judges. *See* sections 103(a), 236(a), 242(b) of the Act, 8 U.S.C. §§ 1103(a), 1226(a), 1252(b) (1994); 8 C.F.R. § 3.0 (1995); 28 C.F.R. Part 24 (1995); *Matter of Anselmo, supra*, at 30; *Matter of Torres*, 19 I&N Dec. 371, 375 (BIA 1986); *Matter of Valdovinos*, 18 I&N Dec. 343, 345 (BIA 1982); *Matter of Bilbao-Bastida*, 11 I&N Dec. 615, 617 (BIA 1966), *aff'd*, 409 F.2d 820 (9th Cir.), *cert. dismissed*, 396 U.S. 802 (1969); *Matter of Tzimas*, 10 I&N Dec. 101, 102 (BIA 1962). Regulations in effect have the force of law. *United States v. Nixon*, 418 U.S. 683, 695-96 (1974); *Accardi v. Shaughnessy*, 347 U.S. 260, 265 (1954).

The respondent suggests that the United States Court of Appeals for the Eighth Circuit, in which this case arises, has indicated that it might be willing to consider that the 7 years of lawful unrelinquished domicile need not begin at the time lawful permanent residence is acquired. Although we are bound by a circuit court's precedents when adjudicating cases arising within that circuit, *see, e.g., Matter of Anselmo, supra*, at 30, we do not agree that there is a controlling case in the Eighth Circuit.

The respondent points to *Margalli-Olvera v. INS*, 43 F.3d 345 (8th Cir. 1994), in support of his position. In that case, however, the court never reached the issue of whether temporary residence could be counted towards the 7 years of lawful domicile. Instead, it found that, even if temporary residence were included, the respondent would not have satisfied the 7-year requirement at the time of his deportation hearing, and thus the Board did not abuse its discretion when it dismissed the respondent's argument on this issue on appeal. *Id.* at 356 (remanding, inter alia, for consideration of whether the respondent's lawful permanent residence during the pendency of his appeal rendered him eligible for section 212(c) relief). The Eighth Circuit has not taken a position on this issue. We are bound by the regulation.

To be eligible for a section 212(c) waiver, an alien must have maintained lawful permanent resident status in the United States for at least 7 consecutive years. 8 C.F.R. § 212.3(f)(2). An alien who adjusts his status to lawful permanent residence under the legalization provisions of the Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3359, is deemed to have done so on the date of filing the application for permanent residence, or the eligibility date, whichever is later. 8 C.F.R. § 245a.3(m) (1995). The respondent became a lawful permanent resident on September 6, 1991, and thus he has failed to satisfy the regulatory requirement that he be a lawful permanent resident for 7 consecutive years immediately preceding the filing of his application.

**ORDER**: The appeal is dismissed.

**FURTHER ORDER:** This decision is referred to the Attorney General for her review pursuant to 8 C.F.R. § 3.1(h)(1)(ii).

*CONCURRING OPINION:* Paul W. Schmidt, Chairman

I respectfully concur.

I concur in Parts I, II, and III of the majority opinion. I reluctantly concur in Part IV of the majority opinion which concludes that we are bound to follow 8 C.F.R. § 212.3(f)(2) (1995) in cases arising outside the jurisdiction of the United States Courts of Appeals for the Seventh and Ninth Circuits.

My reluctance is based on (1) my opinion that 8 C.F.R. § 212.3(f)(2) does not represent the best view of the law; (2) the adverse practical consequences of applying the regulation to cases such as this one while the issue is under review by the Attorney General; and (3) my disappointment that we are

unable to fashion a constructive solution to the administrative problems caused by our decision. Our decision fails to provide any useful guidance on the major legal question before the Board: Whether or not time spent in temporary resident alien status counts as "lawful unrelinquished domicile" for purposes of section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (1994).

I write separately because I believe that the general rule that we must continue to follow a regulation that conflicts with rulings by the courts of appeals in other jurisdictions is outmoded. In my view, it prevents us from fulfilling our role as delegates of the Attorney General on important case-related issues arising under the immigration laws. Therefore, it would be helpful if the Attorney General were to address both the substantive issue involved and the question of the proper procedure for the Board to follow should future situations of this type arise.

## I. THE REGULATION IN QUESTION IS NOT A REALISTIC INTERPRETATION IN LIGHT OF CURRENT CASE LAW DEVELOPMENTS

Whatever might be the merits of the Board's ruling in *Matter of S-*, 5 I&N Dec. 116 (BIA 1953), the better view of the law is contained in the recent rulings of the Seventh Circuit in *Castellon-Contreras v. INS*, 45 F.3d 149 (7th Cir. 1995), and *Avelar-Cruz v. INS*, 58 F.3d 338 (7th Cir. 1995), and the Ninth Circuit in *Ortega de Robles v. INS*, 58 F.3d 1355 (9th Cir. 1995). Those courts have found that an alien who was admitted to the United States as a lawful temporary resident may count that time toward the lawful unrelinquished domicile required for relief under section 212(c) of the Act. I will refer to this rule as the "*Castellon/Robles* rule."

For whatever reason, the Immigration and Naturalization Service ("INS") did not argue 8 C.F.R. § 212.3(f)(2) to either the Seventh Circuit or the Ninth Circuit. Moreover, the Solicitor General did not authorize Supreme Court review in either case.

In fact, there is no conflict among the circuits on this question. The Second Circuit has long disagreed with the Board's *Matter of S-* interpretation. *See Lok v. INS*, 548 F.2d 37 (2d Cir. 1977). Additionally, the Eleventh Circuit has stated in dictum that it will adopt an interpretation like the *Castellon/Robles* rule. *Melian v. INS*, 987 F.2d 1521, 1525 n.6 (11th Cir. 1993).

As recently pointed out by the Fifth Circuit in *Hussein v. INS*, 61 F.3d 377, 380 (5th Cir. 1995), "no circuit has upheld the BIA's view that an alien who attains LPR through IRCA's amnesty provisions does not become lawfully domiciled until he attains LPR status." Although not reaching the issue in *Hussein*, the Fifth Circuit left little doubt that it finds unpersuasive the Board's current interpretation, as embodied in 8 C.F.R. § 212.3(f)(2).

As a result of the foregoing rulings, the regulation that we follow in this opinion is, as a practical matter, no longer good law in four major circuits and is also likely to be rejected in the Fifth Circuit. Those jurisdictions that have rejected the Board's rule encompass the states of California, Florida, New York, Illinois, and Arizona where many, probably the majority, of today's section 212(c) cases arise. In the foregoing circumstances, it seems likely that the Attorney General will, and should, effect some change in the interpretation set forth in 8 C.F.R. § 212.3(f)(2).

## II.  THE PRACTICAL EFFECTS OF OUR DECISION ARE UNFORTUNATE

Unfortunately, our decision today provides little in the way of helpful, practical guidance to either the Immigration Judges or the public as to the state of the law concerning section 212(c) eligibility.  Nevertheless, we must make clear the real consequences of our continuing to follow 8 C.F.R. § 212.3(f)(2) while this matter is being resolved by the Attorney General.

First, we will dismiss a number of currently pending appeals raising the *Castellon/Robles* issue by respondents outside the Seventh, Ninth, and Second Circuits.  This will require adversely affected respondents to pursue their cases in federal court. The Government, in turn, will be required to defend the regulation in court, in all probability without the benefit of the Attorney General's ruling in this case.

Second, Immigration Judges outside the Seventh, Ninth, and Second Circuits will be required to pretermit the issue of section 212(c) eligibility for temporary resident alien applicants in *Castellon/Robles* situations. This could result in numerous unnecessary appeals, remands, and motions to reopen in the event that the regulation is modified or overruled by the Attorney General or additional circuit courts.

Third, respondents outside the Seventh, Ninth, and Second Circuits, who could benefit from the *Castellon/Robles* rule, but who are under final orders of deportation, will have emergency stays of deportation and motions to reopen denied by the Immigration Judges and by us.  Such respondents will be required to seek relief in the federal courts to maintain the status quo pending the Attorney General's review.

Overall, our disposition of this case makes it likely that the important issue involved will be resolved in federal court without the full benefit of the Attorney General's review. It is also likely that a number of respondents who potentially could benefit from the *Castellon/Robles* rule, but who are not able to vindicate their rights in federal court, will be deported while the issue is being decided by the Attorney General.

## III. THE FOREGOING PROBLEMS MIGHT HAVE BEEN MITIGATED OR ALLEVIATED

I am disappointed that we were unable to develop an alternative that would have mitigated or alleviated some of the foregoing problems while this matter is pending review by the Attorney General.

For example, it might have been possible for the Board to announce a policy of holding appeals presenting the *Castellon/Robles* issue in abeyance pending the Attorney General's resolution of the issue. It further might have been possible for the Board to direct Immigration Judges to preserve the issue by considering the merits of section 212(c) applications from respondents outside the Seventh, Ninth, and Second Circuits who would be covered by the *Castellon/Robles* rule.

The INS has been aware of the problem with 8 C.F.R. § 212.3(f)(2) since *Castellon* was decided in February 1995. Alternatively, it might have been possible for the INS either to have (1) sought an emergency suspension of 8 C.F.R § 212.2(f)(2) to allow us to decide the issue on its merits; or (2) engaged in rulemaking to modify the regulation in light of the *Castellon/Robles* rulings. It still would be possible for the Attorney General to act quickly to suspend the rule and allow the Board to decide the substantive issue.

## IV. CONCLUSION

I reluctantly conclude that the we are bound to follow 8 C.F.R. § 212.3(f)(2) outside the Seventh, Ninth, and Second Circuits. Under these circumstances, certification to the Attorney General appears the only way of achieving eventual harmony between the appellate court rulings and the conflicting regulation.

Unfortunately, such a course of action causes real practical problems in the efficient administration of the immigration laws. Therefore, I can only hope that the Attorney General's review will be expeditious and will provide guidance that will assist this Board in responding not only to these cases, but also in responding to similar situations involving regulations that might arise in the future.

For the foregoing reasons, I reluctantly concur in Part IV of the majority opinion.

*CONCURRING OPINION:* Lauri S. Filppu, Board Member, in which Fred W. Vacca, Board Member, joined

I join the majority opinion. I write separately to respond to several contentions advanced by the dissenting opinions. I understand the silence of the majority, in the face of these contentions, to reflect a rejection of them for diverse reasons such that a collective and unanimous response may not be possible. I believe, however, that some response is in order so that no one will

misconstrue the majority's silence as tacit acceptance of the force of those contentions.

Section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (1994), as redefined by case law, provides a discretionary waiver of many grounds of deportation and exclusion to an alien "lawfully admitted for permanent residence" who has "a lawful unrelinquished domicile of seven consecutive years" in the United States. *See Francis v. INS*, 532 F.2d 268 (2d Cir. 1976); *Matter of Silva*, 16 I&N Dec. 26 (BIA 1976); *see also Tapia-Acuna v. INS*, 640 F.2d 223 (9th Cir. 1981). The question in this case is whether an alien is eligible for relief, such that an exercise of discretion one way or the other is in order, if the alien needs to count time as a lawful *temporary* resident toward the "lawful unrelinquished domicile" requirement. The majority appropriately rules that 8 C.F.R. § 212.3(f)(2) (1995) forecloses this Board from granting section 212(c) relief if the "alien has not maintained lawful *permanent* resident status in the United States for at least seven consecutive years immediately preceding the filing of the application." (Emphasis added.)

The regulatory history of 8 C.F.R. § 212.3(f)(2) does not make clear whether the regulation reflects an interpretation of lawful domicile or whether it merely imposes a limit on discretion in granting 212(c) relief. The heading for 8 C.F.R. § 212.3(f) is titled, "Limits on discretion to grant an application under section 212(c) of the Act," and could be read as including both eligibility and discretionary limits on the circumstances under which 212(c) relief can be granted. The Attorney General has the authority to impose such limits on the exercise of discretion. *See Fook Hong Mak v. INS*, 435 F.2d 728 (2d Cir. 1970) (upholding Attorney General regulation that precluded transits without visas from adjusting their status pursuant to section 245 of the Act because the regulation was rationally related to the statute). As suggested by the dissenting opinions, the regulation more likely should be viewed as an interpretation of lawful domicile, because it appears to codify the approach set forth for over 40 years in cases such as *Matter of Kim,* 17 I&N Dec. 144 (BIA 1979); *Matter of Newton*, 17 I&N Dec. 133 (BIA 1979); *Matter of Anwo*, 16 I&N Dec. 293 (BIA 1977), *aff'd on other grounds*, 607 F.2d 435 (D.C. Cir. 1979); and *Matter of S-,* 5 I&N Dec. 116 (BIA 1953). In either case, the regulation imposes an affirmative limit on the authority to grant relief under section 212(c).

In addition, even if the statutory interpretation embodied in this case law were ultimately determined to be at odds with the scope of the "lawful unrelinquished domicile" language of the statute, the dissenting opinions have not adequately explained how this Board could ignore the regulation as a possible limitation on the exercise of discretion alone. However unlikely it may be, the regulatory history does not foreclose this as a basis for the regulation, and there is no claim that the regulation has been superseded by a subsequent statutory enactment. Under these circumstances, and as subordinate

officers under the Attorney General, I would think it necessary to negate all possible grounds for a regulation were we ever able to decline to follow one.

With respect to the matters they do address, the dissenting opinions offer various theories for declining to follow the regulation as a codification of past Board case law, while the Chairman's concurring opinion laments our inability to offer an interpretation of the statutory language independent of the regulation. I have no quarrel with the notion that the significant changes in the Immigration and Nationality Act, occurring from about 1980 onward, and the recent circuit court rulings on the scope of "lawful unrelinquished domicile" would ordinarily warrant a thorough reexamination by the Board of the rule first laid down in *Matter of S-, supra*. But I find it inappropriate to speculate on the outcome of such a reexamination, because the regulation restricts our authority irrespective of what might otherwise be our independent assessment of the statutory language in today's environment. Moreover, I find the arguments for our declining to follow the regulation to be particularly unpersuasive.

1. The dissenting opinions contend that the Board should consider itself free to ignore the regulation in part because the literal language of the provision applies to district directors and Immigration Judges, and not specifically to the Board. This argument is easy to reject. It would not only be contrary to the spirit and overall intent of the regulation issued by our superior officer, the Attorney General, but it would create an administrative nightmare in its implementation.

On the strength of the regulation, Immigration Judges could properly decline to accept evidence bearing on the discretionary side of the waiver in cases involving aliens who use temporary residence time as part of the required 7 years. Indeed, Immigration Judges who took such evidence would be wasting their time, as the regulation forecloses grants of relief to such aliens. But, under the reasoning of the dissenting opinions, the Board would not similarly be foreclosed, and we could find these aliens eligible for relief on appeal. Unfortunately, without evidence bearing on the discretionary issues, we would be forced to remand the cases back to the Immigration Judges for the taking of evidence. But, once back on remand before the Immigration Judges, the aliens would again be foreclosed from obtaining relief under the literal terms of the regulation, and the dissents do not claim that Immigration Judges would be able to rely on our remand orders to override the regulatory direction of the Attorney General. Thus, even assuming that the Immigration Judges would hold the evidentiary hearings required by the remand orders that would flow from the position argued by the dissenting Board Members, the aliens would be forced to take further appeals to the Board to obtain discretionary rulings on their cases. In the process, we would very likely be deprived of the initial assessments of the Immigration Judges on the merits of the claims and on important collateral determinations, such as credibility, unless of course we were to direct the Immigration Judges to

offer advisory opinions on these subjects. In any event, it could often take two administrative appeals for an alien to get around the regulatory prohibition applicable to Immigration Judges.

The dissents' suggestion would create confusion, result in the wasted and inefficient use of precious Immigration Judge hearing time in an already overburdened adjudicatory system, and force the parties through a prolonged, costly, and artificial process. Their suggestion is designed to circumvent the obvious implications of a regulation that, reasonably construed, binds the Board as well as Immigration Judges. While there may be room reasonably to disagree with the policy underlying the rule, that policy disagreement does not provide adequate grounds for contorting and *un*reasonably construing the regulation as it relates to our authority.

The approach suggested by the dissenters, thus, is inconsistent both with the intent of the regulation and with the maintenance of a sensible adjudicatory system. Consequently, when properly interpreted, 8 C.F.R. § 212.3(f)(2) is a specific limitation on the Board's authority within the meaning of 8 C.F.R. § 3.1(d)(1) (1995), and not simply a restriction on district directors and Immigration Judges.

2. The dissenting opinions also suggest that the regulation was promulgated in violation of the notice and comment provisions of the Administrative Procedure Act, 5 U.S.C. § 553 (1994) ("APA"). The regulation, however, was promulgated as part of a package that included changes required by the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978. It was issued as an interim rule with request for comments, and was accompanied by a specific invocation of the "good cause" exception to the normal notice and comment provisions of the APA. Moreover, this Board has never before purported to undertake the responsibility of assessing regulatory compliance with the APA, and I believe it unwise even to begin a practice of making observations in this area where we lack expertise. We ourselves are exclusively a creature of the Attorney General's regulations, and we have properly left it to the courts to resolve questions of APA compliance.

Aside from our lack of authority and expertise on APA questions, I find little value in our offering speculation on this subject. Even if there were a technical defect in the promulgation of the regulation, the Attorney General has ample rulemaking ability to correct any problems in relatively short order. Thus, if the Attorney General wants this restriction on section 212(c) relief, this Board is ill positioned to decline to follow that guidance on technical APA grounds.

3. The dissenting opinions also claim that the regulation is in conflict with the plain language of the statute, as construed by several courts of appeals, and that we are therefore free to ignore the terms of the regulation. A response to this contention requires a more detailed understanding of the

reasons behind our long-standing ruling, first announced in *Matter of S-*, *supra*, and of why some courts have erred in finding that construction to be untenable.

It is important at the outset to understand both why *Matter of S-* reflected a reasonable interpretation of the statute at the time it was decided, and why the courts that have criticized *Matter of S-* have misunderstood its foundations. That 1953 decision analyzed statutory changes, made by the then newly enacted Immigration and Nationality Act of 1952, to the Seventh Proviso of section 3 of the 1917 Immigration Act, the predecessor to section 212(c) of the 1952 Act. It concluded that for purposes of section 212(c) of the Act, the requirement that an alien be returning to 7 years of "lawful unrelinquished domicile" required the alien to have resided in the United States for 7 consecutive years subsequent to admission for permanent residence.

Notwithstanding the claims made in dissent today that the statute is clear, the phrase "lawful unrelinquished domicile" has no obvious meaning in the immigration law context. It is an ambiguous phrase that must be construed in relation to other immigration provisions. While the term "domicile" can be understood without reference to other provisions of the Act, determining when a domicile is "lawful" can only be done in relation to other concepts, and even then the history of litigation over this question suggests that there are several reasonable views. But even conceding that recent legislative changes have given potentially broader meaning to the concept of "lawful" domicile, the Board in 1953 was faced with construing an ambiguous statute, and it properly looked to both the statutory language and the legislative history to give meaning to the words used by Congress.

Much of the debate over the years has centered on the import of a Senate Report, prepared prior to the 1952 Act, which had studied the immigration laws and which made various suggestions for revisions. That Report noted a "suggestion" that had been made in order to make clear that the waiver contained in the Seventh Proviso would only apply to lawful permanent residents who had been domiciled in the United States for 7 years. That "suggestion" was that the words "established after a lawful entry for permanent residence" should be inserted into the text of the Seventh Proviso to qualify the domicile required for eligibility. *See* S. Rep. No. 1515, 81st Cong., 2d Sess. 381-84 (1950) (hereinafter "Senate Report 1515"). Senate Report 1515 expressed no specific disagreement with the "suggestion," but its discussion immediately proceeded to make a formal "recommendation" that the Seventh Proviso be limited to "lawful permanent residents who are returning to a lawful domicile of seven consecutive years after a temporary absence abroad." *Id.* at 384. The exact language of the "suggestion" never appeared in the final text of section 212(c) when it was enacted in 1952. The Board's 1953 ruling in *Matter of S-*, however, was consistent with that unenacted "suggestion."

The United States Court of Appeals for the Second Circuit interpreted the omission of the "suggestion," specifically the phrase "established after a

lawful entry for permanent residence," from the statute to indicate that Congress did not intend the 7 years of lawful domicile to accrue only after admission for permanent residence. *Lok v. INS*, 548 F.2d 37 (2d Cir. 1977). The Board, however, declined to follow the reasoning of that court in cases arising outside of the Second Circuit. *Matter of Anwo, supra*.

As the Second Circuit's *Lok* ruling demonstrated, there are ambiguities in the legislative history, as well as in the statutory language, and the thoroughness of the analysis in *Matter of S-* in both respects may have left something to be desired. Nevertheless, the Board's reading of the legislative history, while not the only plausible reading, was sound, even if not well articulated. *See, e.g., Castillo-Felix v. INS*, 601 F.2d 459 (9th Cir. 1979). First, I do not read the legislative history to reflect that Congress *rejected* the substance of the "suggestion" described in Senate Report 1515. Second, given the structure of the Act in 1952, it was unnecessary for Congress to add the phrase "established after a lawful entry for permanent residence" to the text of the statute, because even without that language, the statute would most appropriately be read to limit the application of section 212(c) to those who had established lawful domicile by virtue of 7 consecutive years as lawful permanent residents.

With the exception of a small number of nonimmigrant classes, only lawful permanent residents would have been able to be both domiciled in the United States and in lawful status in 1952.[1] This group of nonimmigrants included foreign diplomats enjoying diplomatic immunity and designated foreign representatives to international organizations. Sections 101(a)(15)(A), (G) of the Act, 8 U.S.C. § 1101(a)(15)(A), (G) (1952). Congress was well aware of these special categories, and elsewhere enacted special legislation to cover their circumstances. *E.g.,* section 102 of the Act, 8 U.S.C. § 1102 (1952) (exempting many diplomats and foreign representatives from exclusion and deportation grounds). Given the attention paid by Congress to these special nonimmigrant categories elsewhere in the Act, it is highly unlikely that Congress deliberately intended to accord them benefits under section 212(c), without making any mention of that fact.

What is much more likely, in my judgment, is that the 1950 Senate Committee which studied the immigration laws believed its "recommendation"

---

[1] To establish domicile, an alien must be physically present in the United States and intend to make the United States his or her home for the indefinite future. *Matter of Sanchez*, 17 I&N Dec. 218, 221 (BIA 1980). Most nonimmigrants are required to maintain a foreign residence which they have no intention of abandoning, or must be here for a temporary purpose, and thus could not lawfully be domiciled in the United States. There was, and is today, a small group of nonimmigrants who could have an intent to remain in the United States indefinitely, and thus could maintain domicile in the United States, e.g., diplomats, foreign government representatives, treaty traders, and media representatives. *See Castillo-Felix v. INS, supra*, at 464. However, as one court reasoned, it seems that if Congress had "intended to benefit only this small and rather exclusive group of nonimmigrants in addition to aliens with permanent resident visas . . . it would have said so more clearly." *Id.*

(Senate Report 1515, at 384, para. "e") to be consistent with the "suggestion" which had been discussed, in positive terms, in the paragraph preceding the "recommendation." Congress omitted the phrase that was "suggested" in Senate Report 1515 from the final version of section 212(c) because it perceived that phrase as being redundant language, once it inserted the word "lawful" as a further qualification or condition respecting the unrelinquished domicile needed to obtain section 212(c) eligibility. The "suggestion" was not "rejected," as the Second Circuit believed in *Lok v. INS, supra,* at 40-41. Rather, Congress believed it was adopting the substance of the "suggestion" through the language it actually used. Thus, the language that Congress ultimately enacted in section 212(c) is consistent with the "suggestion" in Senate Report 1515 of limiting section 212(c) eligibility to those who had established lawful domicile for 7 years subsequent to acquisition of lawful permanent resident status.

Moreover, we have revisited our analysis in *Matter of S-, supra,* on several occasions and have consistently determined that the conclusion reached in that case properly reflected the intent of Congress at the time of the enacting legislation. *See Matter of Kim, supra; Matter of Newton, supra; Matter of Anwo, supra.* In particular, we have noted that Congress intended the changes made with the 1952 Act to restrict the scope of the Seventh Proviso. *See Matter of Newton, supra* (analyzing Senate Report 1515 again). The Board's consistent view that the 7 years of lawful domicile accrues only subsequent to acquisition of lawful permanent resident status is consistent with restricting eligibility for section 212(c).

Indeed, if Congress had disagreed with the holding in *Matter of S-,* it could have revised the statute to clarify its position. Yet, since that decision was rendered in 1953, Congress has not made any changes to section 212(c) that indicate disagreement with our long-standing interpretation. This is so, despite the fact that we have consistently declined to extend the Second Circuit's *Lok* rule elsewhere, and despite other changes that have been made to the text of section 212(c).

The nature of the relief provided in section 212(c)—a waiver of an exclusion or deportation ground and the permission to continue to live in the United States—also supports our prior holdings on the interpretation of lawful domicile. To be eligible for a waiver under section 212(c) of the Act, one must be a lawful permanent resident and must show lawful unrelinquished domicile of 7 years. Other forms of relief that allow aliens to remain in the United States *permanently* impose more significant eligibility requirements. For example, suspension of deportation, like section 212(c), requires a term of residence in the United States, but, unlike section 212(c), it also requires a showing of good moral character during that residence and a showing that deportation would result in either extreme hardship or exceptional and extremely unusual hardship to the alien or to certain relatives. *See* section 244(a) of the Act, 8 U.S.C. § 1254(a) (1994). Although the eligibility

requirements for section 212(c) relief are relatively minimal, the waiver is only available to a select group of persons who have demonstrated significant ties to the United States, namely, lawful permanent residents.

Congress, in its revisions to the immigration laws in 1952, sought to eliminate certain abuses that it perceived with respect to these forms of permanent relief. *See, e.g.,* Senate Report 1515, at 381-84 (addressing the Seventh Proviso, which was the predecessor to section 212(c)), 595-603, 609-11 (addressing suspension of deportation). The Board's past construction of the ambiguous terms of section 212(c) is consistent with, and does not undermine, this legislative purpose.[2] The position the Board adopted in *Matter of S-, supra*, that only aliens who have been lawful permanent residents for 7 years can be eligible for 212(c) relief, had the practical effect of harmonizing section 212(c) and suspension of deportation. The position adopted in *Matter of S-* renders more significant the threshold eligibility requirements for a 212(c) waiver and consequently is more consistent with the treatment in other provisions of the Act that provide permanent relief from deportation. *See Matter of Anwo, supra*, at 297-98.

Our long-standing rule that only aliens who have been lawful permanent residents for 7 years can be eligible for 212(c) relief is thus supported by the legislative history, by the limited potential scope of the statute when originally enacted, and by comparison to other forms of permanent relief from exclusion or deportation.

There have been substantial changes to the Act in recent years, and there clearly are more categories of aliens who can argue now that they can be both lawfully here and domiciled here, than was the case in 1953. But that fact at most argues for a reexamination of *Matter of S-*. It does not establish that ambiguous statutory language is now clear, nor that a reasonable interpretation of the statute adhered to for over 40 years, and now reflected in a regulation, is at odds with the plain language of the statute.

Congress did use different phrases when it enacted the "lawfully admitted for permanent residence" and the "lawful unrelinquished domicile" requirements of the statute. But we have not equated these phrases; the "unrelinquished domicile" requirement does have an independent meaning. *See Matter of Sanchez*, 17 I&N Dec. 218 (BIA 1980). The Board for decades, however, has construed the word "lawful" to restrict the immigration status that would allow an alien's domicile to be considered "lawful," largely because of the extremely limited possible scope of this concept in years past

---

[2] Consider, by way of illustration, the case of an alien who spent 6 years in the United States as a nonimmigrant treaty trader and 1 year as a lawful permanent resident before committing a deportable offense. To obtain suspension of deportation, this alien would need, among other things, to meet the extreme hardship requirement of section 244(a)(1) of the Act. If, however, his 6 years as a treaty trader counted toward the "lawful unrelinquished domicile" requirement of section 212(c), he would immediately be eligible for that relief with no other significant limitations.

and the other reasons set forth above. Today, the possible range of qualifying statuses has increased meaningfully, and it would be possible to give even greater independent content to these two statutory phrases.

The question that arises, in my view, is whether an interpretation of the statute that was reasonable for so many years now becomes unreasonable, not because the statute in question has been amended, but because surrounding provisions have been amended in such a way as to create respectable arguments for a new construction of the unchanged, but ambiguous statutory phrase. I believe the correct answer lies in the fact that the statute remains ambiguous.

As *Matter of S-* continues to reflect one reasonable interpretation of the ambiguous language of section 212(c), its codification in a regulation cannot be improper. As a consequence, the entire premise of the dissenting opinions' attack on the Attorney General's regulation fails. It is therefore unnecessary to consider other questions posed by the dissents (such as the scope of our authority if we were to conclude that a statute and a regulation were incompatible).

## DISSENTING OPINION:  Lory D. Rosenberg, Board Member

I respectfully dissent.

There are two distinct but fundamental issues before the Board in this case.

The first question is whether, as the Board first held in *Matter of S-*, 5 I&N Dec. 116 (BIA 1953), the statutory language of section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (1994), may be read to require that the 7-year period of lawful domicile necessary to establish eligibility to apply for a waiver under that section begins to run only subsequent to an individual's acquiring lawful permanent resident status. At issue in that regard is both the 1953 decision of the Board in *Matter of S-*, and 8 C.F.R. § 212.3(f)(2) (1995), a regulation first promulgated in 1991 by the Attorney General[1] which tracks the holding of *Matter of S-* and its progeny.

The second, and perhaps the more dispositive question is whether the scope of the Board's authority, as delegated by the Attorney General under 8

---

[1] The regulation at 8 C.F.R. § 212.3(f), consisting of five subsections, was published as an interim rule on October 3, 1991, following passage of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4918 ("1990 Act"). *See* 56 Fed. Reg. 50,033. The stated purpose of the rulemaking at that time was, with regard to section 212(c), to implement a statutory amendment which by its terms limited statutory eligibility to exclude an individual who actually had served more than 5 years' imprisonment for a conviction of an aggravated felony or felonies. The specific subsections which reflect the new terms of the 1990 Act are 8 C.F.R. §§ 212.3(f)(4) and (5), while the first three subsections, of which 8 C.F.R. § 212.3(f)(2) is one, only paraphrased existing Board interpretations of what the statute required or afforded. As elaborated more fully, *infra*, I conclude, therefore, contrary to Board Member Filppu's equivocation concerning the Attorney General's purpose, that the promulgation of 8 C.F.R. § 212.3(f)(2) is no more than an effort at codifying *Matter of S-, supra.*

C.F.R. § 3.1(d) (1995)[2] allows us, unless otherwise limited, to construe and to act upon our construction of the governing statute. In particular, the issue presented is whether we may do this, notwithstanding that our construction may be contrary to our own earlier precedents and an intervening regulation promulgated by the Attorney General.

The ultimate question that follows is whether, in the case before the Board, we are "bound" by the Attorney General's rule which purports to codify our precedent in *Matter of S-, supra*, and if we are bound, what deference must we accord to such codification? On this critical question, the majority, without reaching the substantive issue, would dismiss the instant appeal on the grounds that the regulation is binding and there is no basis upon which we may deviate from its terms.

This decision has prompted the filing of four separate opinions, two of which are dissents in which a third member joins. In his concurring opinion, the Chairman, while inclined to find that neither our decision in *Matter of S-, supra*, nor the 1991 interim rule is a correct interpretation of the law, agrees that our hands are tied and that we must abide by the 1991 rule because it is a regulation promulgated by the Attorney General. An additional concurrence from Board Member Filppu goes the opposite direction, and attempts to speculate upon an issue not even advanced by either party: that perhaps the Attorney General had some substantive discretionary basis for including the language of 8 C.F.R. § 212.2(f)(3), other than to codify the Board's ruling in *Matter of S-, supra*.

For the reasons discussed below, I agree with the dissenting opinion of Board Member Villageliu and joining Member Guendelsberger and would exercise the authority delegated to us by the Attorney General, overrule *Matter of S-*, and find 8 C.F.R. § 212.3(f)(2) invalid on the grounds that it is inconsistent with the statutory language which controls our determinations. Under 8 C.F.R. § 3.1(d) and for the specific reasons elaborated below, I would hold that we are empowered to find that a lawful permanent resident may establish the required 7 years lawful unrelinquished domicile by counting time accrued after application for lawful temporary resident status.

Thus, I would sustain the appeal and remand for a full hearing on the merits of section 212(c) waiver eligibility and the exercise of discretion. In deference to the Attorney General, given the divergence of the opinion concerning the scope of our ability to exercise our delegated power and the fact that the regulation has not been struck down specifically by the various circuit courts of appeals which have overruled or questioned the analysis underlying our

---

[2] The regulation at 8 C.F.R. § 3.1(d) reads as follows:

*Powers of the Board*--(l) *Generally*. Subject to any specific limitation prescribed by this chapter, in considering and determining cases before it as provided in this part the Board shall exercise such discretion and authority conferred upon the Attorney General by law as is appropriate and necessary for the disposition of the case.

holding in *Matter of S-*, I believe it prudent to certify our decision in this case to the Attorney General.

## I.  LAWFUL DOMICILE MAY BE ESTABLISHED INDEPENDENT OF REQUIRING LAWFUL PERMANENT RESIDENT STATUS

We confront first the question of whether an applicant for relief under section 212(c) of the Act, who at the time of application is a lawful permanent resident of the United States, may establish an unrelinquished lawful domicile of 7 years as required by the statute without doing so exclusively on the basis of holding lawful permanent resident status for the requisite 7-year period.  As to this question, I find that the unambiguous terms of the statute make clear that "lawful unrelinquished domicile" of 7 years is an independent statutory eligibility requirement to be met by a lawful permanent resident alien who wishes to apply for and be granted a waiver under section 212(c) of the Act. The statute reads:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) (other than paragraphs (3) and (9)(C). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 211(b). The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.

The language of the statute provides that lawful domicile may be established by a noncitizen who intends to dwell or reside in the United States and establishes a dwelling or residence which is lawful under common usage as well as under the immigration laws. To the extent that *Matter of S-, supra*, compels the conclusion that only those persons lawfully admitted for permanent residence who have acquired 7 years' domicile *after* having attained that status qualify for the discretionary benefits of section 212(c), I find it to be directly in conflict with the plain language of the statute.

In my view, the statutory language in the 1952 Act never compelled nor supported the Board's generalization of the conclusion it reached on the particular facts in *Matter of S-*.[3] Arguably, even then the statute called for

---

[3] It is important to clarify exactly the fact situation addressed by the Board in *Matter of S-, supra.* There, the respondent had been admitted for permanent residence only 4 years before the Board's decision, but had been domiciled in the United States before admission to permanent residence. He argued that section 212(c) should apply to one returning to an unrelinquished domicile of a total of 7 years which *now* was lawful, without regard to whether it *had been* lawful for the entire 7-year period. What the Board rejected, then, really was a proposition that the new statute be read to allow part of the requisite 7-year domicile *not* to have been lawful. Manifestly, this was contrary to the amendment of the statute which altered the prior

distinct definitions of the phrases "admitted for lawful permanent residence" and "lawful unrelinquished domicile." Nevertheless, given the legislative history and the categories of persons able to establish "lawful domicile" according to the common dictionary definition and the various categories which existed prior to 1980, such an interpretation, even if it blurred the distinction in the plain statutory language used, was not wholly unreasonable. Today, however, there have been significant changes in many aspects of the statute and in the courts since our decision in *Matter of S-* and its progeny that warrant clarification and the reversal of the holding in that decision.

My conclusions and those of the concurring and dissenting Board Members Schmidt and Villageliu joined by Guendelsberger are supported by several circuit courts of appeal.[4] In particular, in *Ortega de Robles v. INS*, 58 F.3d 1355 (9th Cir. 1995), the United States Court of Appeals for the Ninth Circuit ruled explicitly that the argument of the Immigration and Naturalization Service that *Castillo-Felix v. INS*, 601 F.2d 459 (9th Cir. 1979), which found that requisite domicile "began when an alien was admitted for lawful permanent residence," still is controlling, must fail. Reading the statutory language in the context of the statute as amended since the Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3359, the Ninth Circuit rejected the agency interpretation, finding that the statutory scheme no longer supports it.[5]

requirements permitting domicile of any character to qualify an otherwise eligible applicant to apply for the waiver. To the Board of the 1950's, just as to the Ninth Circuit of the 1960's (discussed *infra*), considering this requirement to be coextensive primarily with the status of lawful permanent residence, while not precise, was of little practical adverse consequence to the lawfully resident alien.

[4] It is curious that Board Member Filppu's critique of the "dissenters" (and implicitly of the circuit courts of appeal for the Second, Fifth, Seventh, Ninth, and Eleventh circuits with which we concur), asserts that the meaning of the term "lawful unrelinquished domicile" as distinct from "lawfully admitted for permanent residence" is not manifest. Indeed, *Matter of S-, supra*, which Board Member Filppu purports to defend, finds the language of the statute to be plain. Actually, the language of the decision creates its own ambiguity. On the one hand, the Board states explicitly that "we come to the conclusion that this provision of law is available only to those lawfully resident aliens who are returning to an unrelinquished domicile of 7 consecutive years subsequent to a *lawful entry*." *Id.* at 118 (emphasis added). This portion of the decision, by its plain language does not require that the 7 years be accumulated subsequent to acquisition of lawful permanent residence. It states merely that an applicant must be one (1) who is a lawful resident alien; (2) who has an unrelinquished domicile of 7 consecutive years; which is (3) subsequent to a *lawful entry*. On the other hand, the decision goes on to state: "In other words, we construe the section to mean that the alien . . . must have resided in this country for 7 consecutive years subsequent to . . . lawful admission for permanent residence . . . ." *Id.* The reasonable reconciliation of this ambiguity in *Matter of S-, supra*, is found in the specific factual posture of that case as discussed in note 3, *supra*.

[5] While the Ninth Circuit talks in terms of having deferred previously to the agency, in fact it appears to have done so only because the alternate reading of the language of the statute appeared at the time to amount to an almost exclusively an academic distinction ("'that a small group of nonimmigrants [such as diplomats] could conceivably qualify as "lawfully" domiciled . . . does not persuade us that "lawful" [in "lawful unrelinquished domicile"] should be defined

This result is consistent with the much more explicit statutory construction employed in *Castellon-Contreras v. INS*, 45 F.3d 149 (7th Cir. 1995), in which the Seventh Circuit considered whether the terms "lawfully admitted for permanent residence" and "lawful unrelinquished domicile" had two different meanings, contrary to the Service's interpretation. *Id.* at 152. The court said that under governing principles of statutory review, it first "'must give effect to the unambiguously expressed intent of Congress.'" *Id.* at 153 (quoting *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984)); *see also Avelar-Cruz v. INS*, 58 F.3d 338, 339 (7th Cir. 1995). Under these principles, the court defers to a reasonable agency interpretation only if the statute is silent or ambiguous. *Id.* at 153 (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., supra,* at 843-44).[6] Thus, the court held:

> Given that lawful domicile has a meaning distinct from LPR, we find no reason to equate the two terms. We cannot defer to the BIA's interpretation of section 212(c) because the plain meaning of the term "lawful unrelinquished domicile" discussed above does not lead to either an absurd result, or one at odds with Congressional policy. Section 212(c) was designed to help aliens who are likely to have established strong ties to this country, something not requiring LPR status.

*Id.* at 153 (citations omitted).

Indeed, there is growing unanimity in the federal courts that the Board's past reading of section 212(c) as amended in 1952 is not a permissible one. The Board's policy of requiring that a section 212(c) applicant have 7 years of lawful permanent residence imposes a requirement that is not included in the statute by Congress and is ultra vires. *West Virginia University Hospitals v. Casey*, 499 U.S. 83, 101 (1991); *Romero v. INS*, 39 F.3d 977 (9th Cir. 1994). To date, the Board's interpretation that lawful domicile and permanent residence must accumulate concurrently for purposes of section 212(c) eligibility has been rejected by a number of circuit courts of appeals.[7] Moreover, neither the fact that our interpretation in *Matter of S-, supra*, has

---

without reference to the phrase 'lawfully admitted for permanent residence.') *Ortega de Robles v. INS, supra*, at 1360 (quoting *Castillo-Felix v. INS, supra* at 464).

[6] Under *Chevron*, if Congress has spoken to the precise question at issue and its intent is clear, both the court and the agency must give effect to congressional intent and "that is the end of the matter." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., supra*, at 843. If Congress has not addressed the precise issue, "the question for the court is whether the agency's answer is based upon a permissible construction of the statute." *Id.*

[7] For example, the Board's interpretation has been criticized almost universally by those circuit courts of appeals which have considered the issue. *See Hussein v. INS*, 61 F.3d 377, 380 (5th Cir. 1995) (not reaching the issue, but finding no circuit has upheld the Board's view); *Prichard-Ciriza v. INS*, 978 F.2d 219, 224 (5th Cir. 1992); *Rosario v. INS*, 962 F.2d 220 (2d Cir. 1992) (a minor can establish domicile for section 212(c) through a parent and can be credited with 7 years' domicile even if he has not been a permanent resident for that long); *Lok v. INS*, 681 F.2d 107 (2d Cir. 1982) ("*Lok II*") (holding that while one need not be a permanent resident for the entire 7 years, one must be a lawfully resident alien for that time); *Lok v. INS*,

endured for 50 years, nor the existence of the 1991 regulation has any weight in the face of the conclusion the rule is an ultra vires one. *See Brown v. Gardner*, 513 U.S. 115, 119 (1994) ("legislative silence as to [an agency] practice over the last 60 years" is trumped by the plain language of the statute); *Demarest v. Manspeaker,* 498 U.S. 184, 190 (l991) (long-standing agency interpretation of a statute (according to the circuit court, interpretation had been in effect since 1900) is not entitled to deference, even where reenacted without modification). Consequently, I would find that *Matter of S-, supra*, is at odds not only with the plain language of the statute but also with the expressed intent of Congress.[8]

## II. THE BOARD IS AUTHORIZED TO EXERCISE THE DELEGATED DISCRETION AND AUTHORITY CONFERRED UPON THE ATTORNEY GENERAL BY LAW

As to the second question concerning our authority, I find the majority's reasoning is circular when it suggests that the Board is without authority to consider and rule upon regulations promulgated by the Attorney General because her determinations with respect to all questions of law are controlling. This begs the question. In fact, we have been delegated the authority of the Attorney General to administer and enforce the Immigration and Nationality Act and related laws "subject [only] to any *specific* limitation." 8 C.F.R. § 3.1(d) (emphasis added).

## A. The Regulation is at Odds with the Plain Language of the Statute

Neither the interpretation of section 212(c) nor the result pressed by the majority is consistent with the plain language of the statute. The Supreme

---

548 F.2d 37 (2d Cir. 1977) ("*Lok I*") (same); *see also Madrid-Tavarez v. INS*, 999 F.2d 111 (5th Cir. 1993); *Graham v. INS*, 998 F.2d 194 (3d Cir. 1993). *Melian v. INS*, 987 F.2d 1521, 1524-25 (11th Cir. 1993) (defining "lawful domicile" under section 212(c) without reference to permanent residence, as "at least the simultaneous existence of lawful physical presence in the United States and lawful intent to remain in the United States"); *Brown v. INS*, 856 F.2d 728, 731 n.5 (5th Cir. 1988) (finding that intent to remain, and thus lawful domicile, might begin as of the date a nonimmigrant files an application for permanent residence).

[8] A committee report cited by the Board in *Matter of S-, supra*, found that the pre-1952 law allowed the Attorney General to waive the grounds of exclusion "under the specified circumstances even though the alien had never been *lawfully admitted* to the United States." *Id*. at 118 (emphasis added). The report indicates that the subcommittee declined to restrict lawful domicile to that acquired after admission for lawful residence, and instead recommended that the two concepts of lawful permanent residence and lawful domicile be distinct. As early as 1977, the Second Circuit in *Lok I* analyzed the same language and concluded that this legislative history did not support the Board's decision in *Matter of S-*. The court stated that since the Board did not indicate "any sound supporting reasons," it was "baffled at the Board's conclusion that the [quoted paragraphs of the report], when read with the 'plain language' of the statute, [led] inexorably to its decision." *Lok I, supra*, at 41. Rather the Second Circuit found that the Senate and the House Reports mandate a contrary result.

Court law on this point is clear: even a long-standing agency regulation is not entitled to deference if it conflicts with the plain language of the statute. *See Brown v. Gardner, supra; see also Demarest v. Manspeaker, supra.* If we are compelled to deny eligibility to categories of lawfully domiciled persons, such as the respondent in the case before us, our decision would arguably constitute at best an outdated, and arguably incorrect, interpretation of the statute. At worst, if based upon 8 C.F.R. § 212.2(f)(3), we can anticipate that the regulation and our ruling, consistent with its terms, will be found erroneous.[9]

Reading the regulation and the scope of our authority to require our adherence or acquiescence to a reading (compelled by the rule) which the Seventh and Ninth Circuits have rejected, and which other circuits such as the Fifth have indicated their inclination to reject, is not reasonable.[10] It can only lead to a series of reversals by those circuit courts of appeals which have not yet addressed the issue and which are likely to follow their sister circuits, not to mention the human costs to otherwise qualified applicants and their families. For these and the additional reasons stated by dissenting member Villageliu, I believe we are bound to seek a resolution of this issue which would avoid this futile allocation of time and resources by the Attorney General, the parties, and the courts.

The Board's function as the arbiter of an administrative immigration appeals, empowered by the Attorney General to function within the Department of Justice, does not relieve us of an adjudicatory responsibility to review the language of rules promulgated by the Attorney General together

---

[9] While we are not expressly empowered by the regulations to determine violations of either the Administrative Procedure Act or constitutional questions, we are authorized to interpret the law and to take actions which give rational effect to the statutory and regulatory provisions at issue in the cases which come before us. As discussed, the rule, and the policy it codifies, improperly expand the requirements of section 212(c) and add the requirement, not contained in the statute, that a section 212(c) applicant must have been a lawful permanent resident for 7 years. As the 1991 regulation created a new requirement, which affects substantive rights, it is likely to be found a legislative rule which would necessitate notice and comment under the Administrative Procedure Act. Since there was no emergency justifying implementation of the rule immediately, the "good cause" exception of 5 U.S.C. § 553(d) to notice and comment procedures would not apply. In sum, the rule arguably is invalid as having been improperly promulgated.

[10] I find it far more consistent with our delegated role for us to overrule both *Matter of S-* and its restatement in the form of the 1991 regulation as being clearly at odds with the statute, than to decline to act. *See Matter of Kwun*, 13 I&N Dec. 457 (BIA 1969, 1970) (in construing regulations the Board must try to comport with and not to frustrate the intent of Congress, citing *Pierno v. INS*, 397 F.2d 949 (2d Cir. 1968)). For us to act affirmatively rather than responsively would result in applications of the law which are uniform and consistent nationwide. *See Matter of Ozkok,* 19 I&N Dec. 546 (BIA 1988). In addition, it would allow us to provide prompt and expeditious determinations which properly grant relief and do not provoke ultimately successful equal protection challenges. *See Garberding v. INS*, 30 F.3d 1187 (9th Cir. 1994); *Francis v. INS*, 532 F.2d 268 (2d Cir. 1976).

with the governing statute. Here the language of the regulation is different from that of the statute and imposes an additional requirement. As discussed previously herein, the interpretation reflected in the regulation is without foundation and has been rejected as ultra vires.

To follow the course proposed by the majority abdicates our responsibility as an administrative agency to interpret the statute which governs our adjudications, contrary to *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., supra*. In *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987), faced with an issue not dissimilar from that before us here, the Court differentiated between two types of interpretive questions, noting that the "narrow legal question whether the two standards are the same is, of course, quite different from the question of interpretation that arises in each case in which the agency is required to *apply* either or both standards to a particular set of facts." *Id.* at 448 (emphasis added).[11] In the Board's case, as a result of our unique position as an impartial administrative appellate body within the Department of Justice, I believe it is fair to say that we function as a "court" within the agency. Our role in matters within our jurisdiction should include both examining and correcting misinterpretations or misapplications of the statute by components of our own agency.[12]

Indeed, this Board, acknowledging the principle underlying the analysis in *Cardoza-Fonseca*, has stated: "It is a well-established rule of statutory construction that, in cases in which Congress includes particular language in one section of a statute but omits that language in another . . . , a presumption arises that the disparate inclusion and exclusion was intentional and purposeful." *Matter of Hou*, 20 I&N Dec. 513, at 519-520 (BIA 1992) (citing *INS v. Cardoza-Fonseca, supra,* at 449 (1987)).[13] That principle is no less controlling here.

---

[11] We have long recognized that the construction of administrative regulations calls into play the same rules of interpretation as are applicable to the construction of statutes. *Matter of Yeung,* 13 I&N Dec. 528, 532 (BIA 1970). Like the Supreme Court, we too are bound to assume that legislative purpose is expressed by the ordinary meaning of the words used in a statute. *INS v. Cardoza-Fonseca, supra.*

[12] Administrative agencies may reverse long-standing agency policies by either case-by-case adjudication or by rulemaking. *Rust v. Sullivan*, 500 U.S. 173 (1991); *NLRB v. Bell Aerospace Co. Div. of Textron. Inc.,* 416 U.S. 267, 294 (1974). The choice between rulemaking and adjudication lies in the first instance within the agency's discretion, even if the new policy "represents a sharp break" from the agency's prior construction of the applicable statute. *Rust v. Sullivan, supra,* at 186.

[13] Notably our decision in *Matter of Hou, supra*, also refers to another canon of statutory interpretation "uniquely applicable to the immigration laws, which requires any doubts in construing those statutes to be resolved in favor of the alien due to the potentially drastic consequences of deportation." *Id.* at 520. We would be well advised to apply this canon here as well.

## B. It is Within Our Delegated Authority To Reinterpret The Law and Modify or Overrule Our Precedents

There is precedent for the Board to review and construe regulations in relation to current law. For example, in *Matter of Kwun*, 13 I&N Dec. 457 (BIA 1969, 1970), the Board reviewed 8 C.F.R. § 242.2(b) as then amended by the Attorney General. In that situation, the Board found that the regulation endorsed its prior decision in *Matter of Au*, 13 I&N Dec. 133 (BIA 1968).

Similarly, it is not unprecedented for the Board actually to take action contrary to the terms of a regulation. This is particularly true where the Board has found the reading of a statute's terms to differ with a regulation. In *Matter of Gonzalez-Lopez*, 20 I&N Dec. 644 (BIA 1993), the Board expressly did not follow 8 C.F.R. § 3.1(b) and held that it no longer had authority to hear appeals from in absentia deportation orders under section 242B of the Act, 8 U.S.C. § 1252b (Supp. V 1993). In that case, a regulation existed authorizing the Board's jurisdiction, yet the Board deferred not to its own regulation, but to the language of the statute. The regulation *subsequently* was changed to conform to the Board's ruling.

Further, in *Matter of Drysdale*, 20 I&N Dec. 815 (BIA 1994), the Board appears to have overruled, without so stating, the jurisdictional provision of 8 C.F.R. § 242.2(d) (1994) limiting bond reconsideration to cases in which there is a final order of deportation. Although the appeal may have been filed before the deportation order became final, the Board decided the case, denying bond on its merits, rather than dismissing on jurisdictional grounds occasioned by the deportation order becoming administratively final. That regulation remains in place today.

Moreover, here the actual language of the regulation in question neither addresses nor specifically limits the powers of the Board on its face; it only regulates district directors and Immigration Judges. It does not specifically limit the authority of the Board under 8 C.F.R. § 3.1(d). This is notable because where the Attorney General does choose to limit the exercise of her discretion, the terms used in the regulations encompass all of the component adjudicatory entities under her delegation.[14] I do not wish to see the Board voluntarily bind itself to the terms of a regulation which I believe exceeds the mandate of the statute and unreasonably limits eligibility for discretionary

---

[14] Compare 8 C.F.R. § 208.14(d)(1) (1995) (calling for mandatory denial of an application for asylum by an applicant who, having been "convicted by a final judgment of a particularly serious crime in the United States, constitutes a danger to the community"), which apparently applies to a determination of any adjudicator at any level of interview, hearing, or review. *See also* 8 C.F.R. § 208.16 (1995) (calling for denial of an application for withholding of deportation), which tracks the language of the statute, without any differentiation among or between adjudicators or levels of review. Further, 8 C.F.R. § 245a.3(g)(3) (1995) (addressing applications for adjustment of status from temporary to permanent resident status) demonstrates clearly that the Attorney General knows how to specify when she wishes literally to bind all adjudicatory bodies under her authority. The regulation states that notwithstanding

relief. Thus, I would find that the Board's authority is not "specifically limited," as contemplated by 8 C.F.R. § 3.1(d), with regard to our ability to interpret or to disregard 8 C.F.R. § 212.3(f)(2) or any of the other subsections of 212.3(f).

In any event, codification of our prior interpretation should not divest us of authority to revisit that interpretation and to change it to comport with amendments to the statute and decisions of those federal circuit courts of appeal which have rejected that interpretation. The summary of the interim rule and the Supplementary Information which precedes it in the Federal Register make clear that the purpose of the rule was to implement changes made by the Immigration Act of 1990, not to address the "lawful domicile" issue.[15] Moreover, as noted by Board Member Villageliu, the regulation calling for this controversial interpretation has no origin other than our holding in *Matter of S-, supra.* To restrict our ability to modify or overrule our own precedent decision based upon only its adoption for codification, without more, strains credulity.

Board Member Filppu attempts to make much of the dissenters' mention of this discrepancy, claiming that a literal reading would lead only to chaos. However, there are many equally reasonable constructions of the impact of this disparity short of such a doomsday scenario. For one, the Board exercises de novo review authority over many decisions of district directors and over most decisions issued by Immigration Judges. For another, if as Board Member Filppu posits, the regulation is absolutely binding, its failure to mention the Board suggests that its terms are no more than a form of deference to the Board's precedent decision in *Matter of S-, supra*, and should be modified in accordance with modification of that decision.

Therefore, I am not persuaded that our hands are tied on account of the regulation at issue. Consistent with our recognition of the principle in *Matter of Hou, supra,* there is nothing to prevent the Board from engaging in such legal interpretation, applying those principles of statutory construction, and concluding that neither our decision in *Matter of S-, supra*, nor the regulation can stand. Given our delegated authority to designate precedents which shall be binding "in all proceedings involving the same issue or issues," (8 C.F.R. § 3.1(g)), it is wholly consistent with the exercise of our discretion and authority to review and act upon this regulation as appropriate and necessary

---

any other provision, the provisions of section 212(a) of the Act "may not be waived *by the Attorney General.*" 8 C.F.R. § 245a.3(g)(3) (emphasis added).

[15] Specifically, contrary to the speculations of concurring Board Member Filppu, the Summary states that the rule was "necessary to ensure implementation of and regulatory compliance with IMMACT [90]." 56 Fed. Reg. 50,033 (1991). The Supplementary Information likewise discussed changes made by IMMACT 90. Nowhere in the summary or in the supplementary information is there even a mention of 8 C.F.R. § 212.3(f)(2). There is no explanation of the legal authority for this new paragraph or need for it. *See* 56 Fed. Reg. 50,033-34.

to resolve cases coming before us. I believe we should do so in a manner that results in a fair and uniform application of the law to all over whom we have jurisdiction.

In my view, the preferred way to achieve such a result would be for us to take the lead in adopting the holding of *Ortega de Robles, supra*, and the rationale of *Castellon-Contreras v. INS, supra*, as the administrative precedent, rather than merely to passively follow, as, circuit by circuit, *Matter of S-* and ultimately the regulation are struck down. In this regard, I note that such an approach is one consistent with the rationale of agency expertise which underlies the concept of deference in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., supra*.

## III. CONCLUSION

We certainly are as accountable to the provisions of the Act as we are to the regulations of the Attorney General. That is a particularly fair statement here, where the regulation in question is no more than a generalized restatement of our own interpretation of the terms of the Act, and we find it necessary to modify or overrule it in order to conform to the statute. We also have a duty to see that substantive rights under the Act are given priority and are not sacrificed to an elevation of form over content. Consequently, I would act now to overrule our prior decision in *Matter of S-*, and to find the regulation inapplicable in the case of an applicant for relief under section 212(c) who was first lawfully admitted as a temporary resident under section 245A of the Act. I would hold that lawful domicile may be established according to its commonly accepted dictionary definition, and that the requirement of 7 years of unrelinquished lawful domicile under the statute is distinct from the requirement of admission for lawful permanent residence.

*DISSENTING OPINION:* Gustavo D. Villageliu, Board Member, in which John W. Guendelsberger, Board Member, joined

I respectfully dissent.

While I concur with most of the reasoning of the concurring opinion by Board Chairman Schmidt in this case, I respectfully dissent from its conclusion that we are necessarily bound by 8 C.F.R. § 212.3(f)(2) (1995), and cannot recede from the interpretation of "lawful unrelinquished domicile" for purposes of relief under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (1994), as synonymous with lawful permanent residence adopted in *Matter of S-*, 5 I&N Dec. 116 (BIA 1953).

Section 212(c) of the Act requires that an alien be a lawful permanent resident returning to a lawful unrelinquished domicile of at least 7 years for eligibility. I read the statute narrowly to require the status of being a lawful permanent resident, and a lawful unrelinquished domicile in the United States of at least 7 years. The Board's ruling equates lawful permanent

residence with lawful unrelinquished domicile and thereby imposes the additional requirement that the 7 years of lawful unrelinquished domicile must follow the admission as a lawful permanent resident. In choosing this approach the Board reaffirms *Matter of S-, supra*, by finding itself bound by the language of 8 C.F.R. § 212.3(f)(2). I disagree.

First of all, although our interpretation of "lawful unrelinquished domicile" in *Matter of S-, supra*, may have been originally sound, it has been rendered obsolete by the numerous subsequent statutory provisions enacted by Congress which permit an alien to establish a lawful unrelinquished domicile in the United States other than lawful permanent residence.[1] Here, the respondent is a permanent resident who was admitted into the United States as a lawful temporary resident effective April 27, 1988. He had a right to be domiciled in this country as of that date. Thus, he has met the statutory requirements for applying for section 212(c) relief of both lawful permanent residence and a lawful unrelinquished domicile of more than 7 years, even if his eventual admission for lawful permanent residence took place on September 6, 1991, less than 7 years before his application for a section 212(c) waiver of excludability. As noted by the concurring opinion, every court which has reviewed this issue recently has come to the same conclusion. *See Castellon-Contreras v. INS*, 45 F.3d 149 (7th Cir. 1995); *Ortega de Robles v. INS*, 58 F.3d 1355 (9th Cir. 1995); *cf. Lok v. INS,* 548 F.2d 37 (2d Cir. 1977). The courts that have not yet had to reach the issue have also indicated that they would reach the same result in cases involving the time accrued as a lawful temporary resident under the amnesty provisions of the Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3359 ("IRCA"). *See Melian v. INS*, 987 F.2d 1521, 1524-25 (11th Cir. 1993); *Prichard-Crizia v. INS,* 978 F.2d 219, 223-24 (5th Cir. 1992). This trend suggests that the statutory language is clear and that it should control over a conflicting regulation.

The conflicting regulation, 8 C.F.R. § 212.3(f)(2), has no independent origin beyond our decision in *Matter of S-, supra*. It was added to the regulations on October 3, 1991, as part of the interim rules to implement sections 511 and 545 of the Immigration Act of 1990, Pub. L. No. 101 - 649, 104 Stat. 4978, 5052, 5061, which precluded section 212(c) relief to aggravated felons who had served 5 years' imprisonment and also to aliens failing to appear at specified immigration proceedings. These amendments to the Act did not otherwise address section 212(c). Also, there was no discussion of the specific language of 8 C.F.R. § 212.3(f)(2) accompanying the regulation, and the regulation appears to be merely a reiteration of our conclusion in *Matter of*

---

[1] For a contrary view on the soundness of our decision in *Matter of S-, supra*, see Wettstein, *Lawful Domicile for Purposes of INA § 212(c): Can It Begin with Temporary Residence*, 71 Interpreter Releases No. 37 Sept. 26, 1994, at 1273.

*S-, supra. See* 56 Fed. Reg. 50,033 (Oct. 3, 1991).[2] Moreover, the regulation does not specifically refer to this Board. If 8 C.F.R. § 212.3(f)(2) is read as a substantive limitation upon our authority to interpret the law, I agree with the dissenting opinion of Board Member Rosenberg, that its issuance appears to violate the advance notice and public comment requirements of 5 U.S.C. § 553 (1994). *See Chrysler Corp. v. Brown,* 441 U.S. 281, 301-02 (1979). I believe that it is a mistake for the majority and concurring opinions to find this Board bound to uphold an obsolete interpretation of the law just because this interpretation was codified in an apparently ultra vires and improperly enacted regulation.

I recognize that this Board is bound by the regulations enacted by the Attorney General. *See Matter of Fede*, 20 I&N Dec. 35 (BIA 1989). However, this Board is also bound by the statutes enacted by Congress. *See Matter of Valdovinos,* 13 I&N Dec. 343 (BIA 1982), and cases cited therein. Where a federal statute and a regulation conflict, the statute controls. In fact section 242(b) of the Act, 8 U.S.C. § 1252(b) (1994), specifies that the controlling regulations in deportation proceedings must be consistent with the Act. It states that "proceedings before a special inquiry officer acting under the provisions of this section shall be in accordance with such regulations, *not inconsistent with this Act,* as the Attorney General shall prescribe." (Emphasis added.) Since 8 C.F.R. § 212.3(f)(2) does not specifically limit the powers of the Board, as it addresses only the discretionary powers of the Immigration and Naturalization Service and Immigration Judges, as noted by Board Member Rosenberg, a better approach would have been to overrule *Matter of S-, supra,* as obsolete, point out the conflict with 8 C.F.R. § 212.3(f)(2), certify the case to the Attorney General, and direct the Immigration Judges to proceed to consider applications for section 212(c) waivers, while the Attorney General considers this issue.

The regulations at 8 C.F.R. § 3.1(d)(1) (1995) specify that subject only to specific limitations, the Board is empowered to exercise such discretion and authority conferred upon the Attorney General by law as is appropriate and necessary for the disposition of the case. Surely, it is appropriate and necessary for the Attorney General to note when a carelessly enacted regulation conflicts with a statute. The regulation at 8 C.F.R. § 3.1(g) contemplates that the Board has primary responsibility for interpreting immigration statutes and can render decisions binding upon the Service and the Immigration Judges subject to review by certification by the Attorney General pursuant to 8 C.F.R. § 3.1(h) in a limited number of cases. We should provide the

---

[2] In fact, 8 C.F.R. § 212.3(f)(2) appears to be inconsistent with our holding in *Matter of Diaz-Chambrot*, 19 I&N Dec. 674 (BIA 1988), and *Matter of Rivera-Rioseco,* 19 I&N Dec. 833 (BIA 1988), relating to Cuban adjustment of status cases, although in these cases, the pertinent statute specifically rolls back the effective date of the acquisition of the lawful permanent residence, and thus, could be distinguished on that basis. *See* Cuban Adjustment Act of November 2, 1966, Pub. L. No. 89-732, 80 Stat. 1161.

Attorney General with a clearer resolution of this issue. We have not in the past hesitated to review the history and purpose of regulations that appear to limit the jurisdiction of Immigration Judges in ways inconsistent with the statutory scheme, noting that it is inappropriate to abdicate the resolution of such important issues to the courts. *See Matter of Kwun*, 13 I&N Dec. 457, 464, 469-70 (BIA 1969, 1970). Moreover, our power to resolve legal issues by adjudication, instead of rulemaking, has consistently been recognized. *See, e.g., Nunez-Pena v. INS,* 956 F.2d 223, 225 (10th Cir. 1992) (noting the Board's adoption of the outstanding and unusual equities requirement for section 212(c) relief to aliens deportable for committing serious crimes). As stated above, 8 C.F.R. § 212.3(f)(2) does not expressly limit our prescribed jurisdiction to interpret statutes and regulations under the Immigration and Nationality Act on behalf of the Attorney General. In *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 294 (1974), the Supreme Court held that an agency "is not precluded from announcing new principles in an adjudicative proceeding and . . . the choice between rulemaking and adjudication lies in the first instance within the [agency's] discretion." A rigid rulemaking requirement "'would make the administrative process inflexible and incapable of dealing with . . . unforeseeable situations.'" *Id.* at 292-93 (quoting *SEC v. Chenery Corp.,* 332 U.S. 194, 202 (1947). Thus, this Board need not wait until every federal circuit court of appeals rejects *Matter of S-, supra*, or until the language of 8 C.F.R. § 212.3(f)(2) is modified before allowing respondents to avail themselves of the remedy provided by law. Where the language of the statute is clear and the regulation is clearly inconsistent with the statutory language, this Board should rule that the statutory language controls over the regulation.

The majority's approach runs against the need for uniformity in the enforcement of our immigration laws regarding criminal aliens. *Cf. Matter of Silva,* 16 I&N Dec. 26 (BIA 1976) (adopting the rule of *Francis v. INS,* 532 F.2d 268 (2d Cir. 1976), regarding section 212(c) applications in deportation proceedings). Immigration Judges outside the jurisdiction of United States Courts of Appeal for the Second, Seventh, and Ninth Circuits will be bound to a doomed rule pretermitting applications for section 212(c) waivers, until these applications are eventually revived by the courts or the passage of time renders the issue moot. Most aliens who obtained their residence through IRCA will have their 7 years of lawful permanent residence long before this issue is finally resolved by all of the circuits or there is a change in the language of the regulation. Meanwhile, the mandate for an expeditious resolution of criminal alien cases will be seriously undermined by creating a class of criminal aliens whose section 212(c) waiver applications are merely postponed by the majority's refusal to timely decide these cases while the criminals are still imprisoned so that those ordered deported can be expeditiously removed, and those granted relief from deportation can proceed to rehabilitate themselves without the limitations imposed on aliens whose deportation

cases are pending. *See* section 242A of the Act, 8 U.S.C. § 1252A (1994). These concerns require that we, at least, overrule *Matter of S-, supra*, now as inconsistent with the present statute in order to schedule and resolve these cases expeditiously.

## BEFORE THE ATTORNEY GENERAL
### (June 29, 1997)

Pursuant to 8 C.F.R. § 3.1(h)(1)(ii), the Board of Immigration Appeals has referred to me for review its decisions in *Matter of Ponce de Leon*, A91 278 310 (BIA Jan. 3, 1996), and *Matter of Cazares,* A92 166 321 (BIA Jan. 3, 1996), both of which involved the question of an alien's eligibility to apply for a waiver of deportability under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c). On November 25, 1996, an interim regulation that resolves the issues in these cases was published at 61 Fed. Reg. 59,824 (1996) (to be codified at 8 C.F.R. pt. 212). Accordingly, I decline to review the cases and remand them to the Board for reconsideration in light of the promulgation of the aforementioned regulation.

## BEFORE THE BOARD ON REMAND
### (October 8, 1997)

BEFORE: Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; VACCA, HEILMAN, HOLMES, HURWITZ, VILLAGELIU, FILPPU, COLE, MATHON, and GUENDELSBERGER, Board Members. Dissenting Opinion: ROSENBERG, Board Member.

SCHMIDT, Chairman:

This case is before us on remand from an order of the Attorney General dated June 29, 1997. In our original decision in this case, we addressed the question of the respondent's statutory eligibility for a waiver of inadmissibility under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (1994). *Matter of Ponce de Leon*, 21 I&N Dec. 154 (BIA 1996). We found the respondent ineligible for relief and dismissed the appeal. We further ordered that the decision be certified to the Attorney General for review pursuant to 8 C.F.R. § 3.1(h)(1)(ii) (1995).

In her order, the Attorney General noted that an interim regulation that resolved the issue in this case was published on November 25, 1996. *See* 61 Fed. Reg. 59,824 (1996); *see also* 8 C.F.R. § 212.3(f)(2) (1997). The Attorney General therefore declined to review the case and remanded the record to the Board for reconsideration in light of the regulation.

On April 24, 1996, while this case was pending before the Attorney General, Congress amended section 212(c) of the Act by section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, 1277 ("AEDPA"). Under the provisions of that section, an

"alien who is deportable by reason of having committed any criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(i)" is not eligible for a section 212(c) waiver. Although the Board held that this bar to relief applied only to applications filed after April 24, 1996, the Attorney General vacated the Board's decision and held that the AEDPA amendment applied to cases pending on the date of its enactment. *Matter of Soriano*, 21 I&N Dec. 516 (BIA 1996; A.G. 1997).

The respondent in this case conceded deportability under section 241(a)(2)(B)(i) of the Act, 8 U.S.C. § 1251(a)(2)(B)(i) (1994), but denied deportability under section 241(a)(2)(A)(iii). He was found by the Immigration Judge to be deportable on both grounds. On appeal, we agreed that the respondent is deportable as an aggravated felon under section 241(a)(2)(A)(iii). He is therefore no longer eligible for a section 212(c) waiver. *Matter of Soriano, supra.*

In view of the Attorney General's remand for reconsideration of this case and the 1996 amendment of the statute, our prior order will be vacated. Upon reconsideration, we again find that the respondent is deportable as charged and that he is ineligible for section 212(c) relief. Accordingly, the respondent's appeal will be dismissed.

**ORDER:**      Our decision of January 3, 1996, is vacated.

**FURTHER ORDER:**      The appeal is dismissed.

*DISSENTING OPINION:*  Lory D. Rosenberg, Board Member

I respectfully dissent.

I dissent from the majority opinion for the reasons stated in my dissenting opinion in *Matter of Cazares*, 21 I&N Dec. 188 (BIA 1996; A.G., BIA 1997).

Although the posture of the instant case is slightly different because we did not find ourselves bound by federal court authority in the jurisdiction in which this respondent's case arose, the equitable considerations warranting nunc pro tunc adjudication of the respondent's waiver application under section 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c) (1994), are much the same. As I noted in my dissent at the time we originally issued our decision in this case, there was then growing unanimity in the federal courts that the Board's past reading of section 212(c), as amended in 1952, was not a permissible one. Citing *West Virginia University Hospitals v. Casey,* 499 U.S. 83, 101 (1991), and *Romero v. INS,* 39 F.3d 977 (9th Cir. 1994), I acknowledged that our policy of requiring that the 7-year period of lawful domicile could be satisfied by a respondent only after being granted lawful resident status appeared to be ultra vires.

At that time, the Board's interpretation that lawful domicile and permanent residence must accumulate concurrently for purposes of section 212(c)

eligibility had been either rejected or questioned by a number of circuit courts of appeals.[3] *White v. INS,* 75 F.3d 213 (5th Cir. 1996); *Ortega de Robles v. INS,* 58 F.3d 1355 (9th Cir. 1995); *Avelar-Cruz v. INS*, 58 F.3d 338 (7th Cir. 1995); *Castellon-Contreras v. INS*, 45 F.3d 149 (7th Cir. 1995); *see also Hussein v. INS*, 61 F.3d 377, 380 (5th Cir. 1995) (not reaching the issue, but finding no circuit has upheld the Board's view); *Madrid-Tavarez v. INS*, 999 F.2d 111 (5th Cir. 1993); *Graham v. INS,* 998 F.2d 194 (3d Cir. 1993); *Melian v. INS*, 987 F.2d 1521, 1524 (11th Cir. 1993) (defining "lawful domicile" under section 212(c) without reference to permanent residence, as "at least the simultaneous existence of lawful physical presence in the United States and lawful intent to remain in the United States indefinitely"); *Prichard-Ciriza v. INS*, 978 F.2d 219, 224 (5th Cir. 1992); *Rosario v. INS,* 962 F.2d 220 (2d Cir. 1992) (stating that a minor can establish domicile for section 212(c) eligibility through a parent and can be credited with 7 years' domicile even if he has not been a permanent resident for that long); *Brown v. INS,* 856 F.2d 728, 731 n.5 (5th Cir. 1988) (finding that intent to remain, and thus lawful domicile, might begin as of the date a nonimmigrant files an application for permanent residence); *Lok v. INS*, 681 F.2d 107 (2d Cir. 1982) ("*Lok II*") (holding that while one need not be a permanent resident for the entire 7 years, one must be a lawfully resident alien for that time); *Lok v. INS,* 548 F.2d 37 (2d Cir. 1977) ("*Lok I*") (same).

As I discussed in my dissenting opinion in *Matter of Cazares, supra*, the regulation published by the Attorney General while *Matter of Cazares* and this case were pending before her, suggests strongly that the Attorney General wished to bring agency policy and practice into compliance with the rulings of the several Federal courts that had addressed the treatment of persons first admitted for lawful temporary residence, whose status was later adjusted to that of lawful permanent resident. It also is notable that, in enacting the cancellation of removal provision, which is widely accepted as replacing waiver relief under former section 212(c) of the Act, Congress crafted the terms of that provision explicitly to acknowledge the distinction between the acquisition of lawful permanent resident status and the period of residence accrued after admission in any status. *See* section 240A(a) of the Act, enacted at section 304(a)(3) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-587 (Sept. 30, 1996) (to be codified at 8 U.S.C. 1229b(a)).

Our adherence in the respondent's case to an interpretation that by all accounts has now been shown to be founded on an erroneous interpretation of the statute, wrongly denied him the opportunity to apply for a form of relief that he was erroneously precluded from applying for at the time of his hearing. Typically, a procedural error, such as the erroneous denial of an

---

[3] For example, the Board's interpretation has been criticized almost universally by those circuit courts of appeals which have considered the issue.

opportunity to apply for an asserted form of relief for which the respondent is eligible, is cured by simply holding a new hearing "in compliance with due process requirements," as this remedy restores the wronged applicant to the position in which he found himself prior to the procedural error. *Batanic v. INS*, 12 F.3d 662, 667 (7th Cir. 1993); *see also Shahandeh-Pey v. INS*, 831 F.2d 1384, 1390 (7th Cir. 1987) (remanding to allow an alien denied the opportunity to "have his day in court" to present all of his evidence in support of his application for asylum in lieu of deportation).

When remand for reopening to afford the respondent the opportunity to apply for relief no longer can meaningfully cure the prior error, it is then that the equitable remedy of nunc pro tunc relief is appropriate. *Batanic v. INS, supra* (holding that where denial of the right to counsel deprived the respondent of his right to apply for asylum, counsel's ability to protect the respondent's rights in a reconvened hearing must include the ability to apply for asylum nunc pro tunc because of an intervening change in the statute). In particular, "*when the procedural defect has also resulted in the loss of an opportunity for statutory relief*," the demands of due process require more than merely reconvening the hearing. *Id.* at 667 (emphasis added). When a violation of due process results in a denial of a fair hearing on the question of eligibility for relief, the respondent should be afforded the opportunity for consideration of his claim based upon the law as it existed at the time he was deprived of his rights. *Snajder v. INS*, 29 F.3d 1203, 1208, n.12 (7th Cir. 1994).

For these reasons I would remand the respondent's case for consideration of his section 212(c) application nunc pro tunc.